Phyllis Brasch **LIBRACH** and the Pulitzer Publishing Company, Plaintiffs/Appellants,

v.

Barbara J. **COOPER**, et al., Defendants/Respondents.

No. 55577.

Missouri Court of Appeals, Eastern District, Division Four.

July 25, 1989.

**352**

Robert B. Hoemeke, Joseph E. Martineau, St. Louis, for plaintiffs/appellants.

Thomas E. Tueth, Robin S. Willford, St. Louis, for defendants/respondents.

SATZ, Judge.

This case raises issues about the interpretation and application of the Open Meetings and Records Act (Act), §§ 610.010 et seq. RSMo 1986 (1987 Supp.)[1] Plaintiffs, Phyllis Librach (Librach), a reporter for the St. Louis Post Dispatch, and the Pulitzer Publishing Company (Pulitzer) filed suit against the individuals comprising the Board of Education of the Parkway School District (Board), requesting the court to enjoin the Board from prohibiting plaintiffs from examining certain "records" pertaining to the "severance" pay of the former Superintendent of the Parkway School District (District), Leonard T. Burns (Burns). The court denied the request and entered judgment for the Board. Plaintiffs appeal. We reverse and remand with directions.

1. All statutory references are to RSMo 1986

The cause was submitted to the trial court on stipulated facts. Prior to July 1, 1988, Burns was employed as Superintendent of the District under a contract that extended through June 30, 1989. After a Board election in April, 1988, the Board initiated discussions with Burns about the possibility of his departure prior to the end of his contract because of "philosophical differences."

On June 16, 1988, the Board voted to hold a closed meeting, and to close the records pertaining to matters discussed in that meeting. During the meeting, by a vote of 5-0, the Board approved a motion accepting Burns' resignation, effective July 1, 1988, and approving a written Settlement Agreement (Agreement) regarding the termination of Burns' employment contract. The Board's legal counsel was present during the meeting and discussed with the Board the alternatives to and ramifications of the Agreement. The Board and Burns agreed to keep the Agreement confidential.

At an open meeting of the Board on June 30, 1988, defendant Barbara Cooper, President of the Board, announced the Board's acceptance of Burns' resignation and made a press release available to the public. The press release made no reference to the Agreement or to any financial compensation to be made pursuant to the Agreement.

Ms. Librach asked Ms. Cooper to reveal the terms and conditions of the Agreement. Ms. Cooper declined the request. Subsequently, the District's Custodian of Records sent to Ms. Librach a letter revealing the holding of the closed meeting on June 16, 1988, the Board's acceptance of Burns' resignation and the approval of the Agreement by a vote of 5-0. The letter also disclosed Burns' salary for the school year 1987–1988 and his salary for 1988-89 had he remained Superintendent. The letter refused access to records or additional information requested by Ms. Librach, "pertaining to [Burns'] resignation and to the compensation, salary or severance paid or to be paid to him."

(1987 Supp.) unless otherwise stated.

Plaintiffs then sought injunctive relief, which was denied, the trial court stated, "particularly for the reason that the Settlement Agreement in question is a closed record, an exception to the 'Open Meetings' Act, ... § 610.021 RSMo 1986 (1987 Supp.), subsections 1, 3 and 13". Plaintiffs appeal followed.

On appeal, plaintiffs limit their request for disclosure, as they did below, to the terms of the final Agreement and "other documents ... regarding payments to Burns." Plaintiffs contend the requested records are "public records", which must be open under the Act, and they argue none of the cited statutory exceptions, §§ 610.021(1), (3) or (13), authorizing closure, is applicable. Defendants contend that each of these subsections permit closure.

The parties agreed to our *in camera* inspection of the Agreement. We have done so. The Agreement is a severance contract between the Board and Burns. The kinds of terms and conditions in it are not unusual or atypical.[2] We limit our decision to those terms and conditions. Within that limit, we conclude plaintiffs' request must be satisfied.

An open society needs open institutions making open decisions openly arrived at. There are exceptions, however. These exceptions include the need to protect personal privacy when the institutional decisions significantly affect that privacy. The two needs create an obvious tension. This tension is accommodated in Missouri's Open Meetings and Records Act, § 610.010 et seq. From its initial enactment in 1973 through its Amendments in 1978, 1982 and 1987, the Act, both implicitly and expressly, provided for open public meetings and public records, with its exceptions to be narrowly construed.

Thus, "[i]t is the public policy of this state that meetings, records, votes ... of public governmental bodies be open to the public.... [The statutes] shall be liberally construed and [their] exceptions strictly construed to promote this public policy." § 610.011.1; *see, e.g., Cohen v. Poelker,* 520 S.W.2d 50, 52 (Mo. banc 1975); *Tipton v. Barton,* 747 S.W.2d 325, 330 (Mo.App. 1988). The parties have stipulated that the District is a "public governmental body", and none of the parties dispute the Settlement Agreement is a "record retained by ... [a] public governmental body", and, thus a "public record." § 610.010(4).

Once plaintiffs showed the Board "held a closed meeting, record, or vote, the burden of persuasion" shifted to the Board "to demonstrate compliance with the requirements of the [Act]." § 610.027(2). The Board's reliance on § 610.021(1), (3) or (13) for an exception to this burden is not persuasive.[3]

### § 610.021(1)

§ 610.021(1) authorizes the closure of records pertaining to:

(1) Legal actions, causes of action or litigation involving a public governmental body and any confidential or privileged communications between a public governmental body or its representatives and its attorneys. ...

The underlined language was added to the Act in 1987. (L.1987, S.B. No. 2 § A). Prior to this amendment, the exception covered only meetings, records and votes "pertaining to legal actions, causes of action, or litigation involving a public governmental body..." § 610.025(1) RSMo 1986. The Board argues the use in the amendment of the disjunctive "confidential or privileged communications between a public governmental body ... and its attorney ..." is not cautionary redundancy. "Privileged communications" refers to communications protected by the traditional attorney/client privilege, the Board contends, but "confidential communications", the Board argues, is a much broader exception. By creating this new exception, the Board reasons, the General Assembly intended that

---

**2.** The Agreement does contain mutual promises not to disclose the terms of the Agreement. Private promises, however, cannot change statutory dictates.

**3.** § 610.021(1), (3) and (13) are set out in the Appendix.

"whenever a public body engages in consultation with its attorney about a legal matter, the meeting and all records relating to the meeting may be closed—irrespective of whether there is litigation pending or whether the traditional attorney/client privilege applies."

The Board contends they met with legal counsel on June 16, 1988, after prior negotiations with Burns, discussed the "legal ramifications of the situation", and approved the Agreement. The Agreement was not just related to the "confidential discussions", the Board argues, it was the central topic of discussion at that meeting. Therefore, the Board concludes, the Agreement need not be disclosed. This reasoning is questionable and the conclusion unacceptable.

We need not address the real or ostensible differences between "confidential" and "privileged communications" as used in § 610.021(1). As used in other contexts, the meanings of these words certainly overlap. *Black's Law Dictionary* 270 (5th ed.1979). *See also State ex rel. Headrick v. Bailey,* 365 Mo. 160, 278 S.W.2d 737, 740 (1955). Arguably, the General Assembly used the word "confidential" in addition to "privileged" to ensure protection of the attorney's communications regarding matters otherwise protected from disclosure under the remaining exceptions of § 610.021 or as otherwise provided by our statutes. *See* § 610.021(14) (exception provided for "[r]ecords which are protected from disclosure by law.")[4] The use of the word "confidential" simply protects those communications with an attorney about these otherwise protected matters, and those communications do not waive this protection.

More important, however, is the nature of the information sought by plaintiffs. Plaintiffs are not seeking the "communications" between the Board and its attorney. They do not seek any settlement proposals or negotiations discussed prior to the final Agreement, nor do they seek the records or minutes relating or pertaining to those possible communications and deliberations. Simply stated, the Agreement sought is not a "communication" between the Board and its attorney. It is the final, written contract between the Board and Burns, a third party. To characterize this contract as a record "relating to the confidential communications with counsel" expands the exception to include more than the confidential communications themselves. We are mandated to read the exceptions narrowly, not expansively. § 610.011.1; *see e.g., Wilson v. McNeal,* 575 S.W.2d 802, 809 (Mo.App. 1978).

Furthermore, the implications of the Board's argument are unacceptable. Admittedly, the advice of an attorney is as important to a governmental body as it is to a private party. Thus, the need to communicate candidly with an attorney is as important to a governmental body as it is to a private party, and the public interest is served by protecting the communications in both instances. However, to prohibit the disclosure of the final contract here merely because an attorney was consulted by the Board causes the exception to engulf the Act's disclosure provisions. The Agreement, with no unusual or atypical kinds of terms or conditions, does not require this result.

### § 610.021(3)

§ 610.021(3) permits the closure of meetings, record and votes pertaining to:

Hiring, firing, disciplining or promoting an employee of a public governmental body. However, any vote on a final decision, when taken by a public governmental body, to hire, fire, promote or discipline an employee of a public governmental body must be made available to the public within seventy-two hours of the close of the meeting where such action occurs....

4. Examples of matters made confidential by other statutes are:

Tax returns and Department of Revenue records, §§ 32.057(1) and (2); reports relating to nursing home residents, § 198.070(7); welfare records, § 208.120.

The Board correctly states the policy manifested by this exception is twofold: first, to promote candid discussion by members of the governmental body in considering the listed matters; second, to protect the employee's privacy. *See, e.g., Hudson v. School District of Kansas City,* 578 S.W.2d 301, 308 (Mo.App.1979). The Board reads into this protection the authority to keep the Agreement closed.

The Board notes the General Assembly amended the predecessor of § 610.021(3) to require the vote on a final decision to hire or fire be made "available to the public within 72 hours of the close of the meeting where such action occurs." No mention was made about records, the Board notes. To the Board, this omission is consistent with the decisions of this Court in *Wilson v. McNeal,* 575 S.W.2d 802 (Mo.App.1978) and *Brown v. Weir,* 675 S.W.2d 135 (Mo. App.1984), interpreting the Act prior to the 1987 amendment. These cases and the statute's present language, the Board argues, require the Board to disclose the vote taken but not the underlying records. This disclosure, the Board contends, informs the public of the final action taken by the Board, while protecting "important privacy interests of the employee." The Board reads the language of the statute and of our cases too broadly.

Generally, disclosure of an employment contract defining the terms and conditions of employment of employees of public governmental bodies should not inhibit candid discussions prior to the execution of the contract; nor should it significantly jeopardize the privacy of the employee. The exception for personnel decisions is designed to protect the process by which the ultimate decision is made, not the decision itself. More specifically, the terms and conditions of the Agreement here are not of the kind which can sensibly be construed as unusual or atypical. The concealment of these terms and conditions is not justified by either of the two policy concerns noted by the Board.

Moreover, the Board's reliance on *Wilson v. McNeal* and *Brown v. Weir* is misplaced. These cases simply hold and teach that if a meeting is properly closed, the records of that meeting may be closed to the extent those records would disclose the minutes memorializing that meeting. This does not mean the Agreement here, a product of a closed meeting with no unusual terms, may be closed at the option of the Board.

### § 610.021(13)

■ § 610.021(13) authorizes the closure of closed meetings, record and votes relating to:

> Individually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment, except that this exemption shall not apply to the names, positions, salaries and lengths of service of officers and employees of public agencies once they are employed as such;

The General Assembly added this Section by Amendment in 1987 (L.1987, S.B. No. 2, § A). The Board contends an employment agreement between a public governmental body and an employee is an "individually identifiable personnel record" and also is a "record pertaining to an employee." The Agreement and any related records here, the Board reasons, are a "modification of the employment agreement" and, therefore, they are as much "individually identifiable records" and "records pertaining to employment" as the employment agreement itself. We disagree.

The Board's major premise is that an employment agreement of a public employee is a personnel record and, therefore, may be closed. This stands the mandate for construing the Act on its head. The mandate is to construe the exceptions narrowly and the disclosure requirement liberally, not vice versa. Public employees may not wish their employment contracts known, but this personal desire is insignificant when contrasted to the public's interest in knowing what their public servants are being paid and under what terms and conditions. The General Assembly did not expressly create an exception for employment contracts and we decline to do so by implication.

Moreover, this provision authorizing closure of personnel records, excepts "salaries" from this authorization. The Board attempts to limit this language by distinguishing severance payment from salary. Severance payments generally, the Board argues, are not salary payments because they are not "compensation ... for official or professional service, or ... regular work." *St. Louis Firefighters Assoc., Local #73 v. City of St. Louis*, 637 S.W.2d 128, 130 (Mo.App.1982). The severance payment here, the Board contends, was a "discretionary payment to Burns for his release of the Board from a contractual commitment."

This attempt to limit the meaning of the term "salary", as used in this statute, narrowly defines it, when the meaning should be broadly construed. To state the obvious, the court in the *Firefighters* case was not construing the present Act. The reasoning used by the Board to separate and disconnect the Burns' severance payment here from his salary requires nice distinctions appreciated by ancient practitioners at the bar but never understood or accepted by the public. Furthermore, to limit the word "salary" in its present context, as the Board suggests, would mean other remunerations not limited to severance payments, such as travel expenses, provided by the governmental body could be effectively concealed from public scrutiny.

Missouri law properly recognizes the public interest in an open government. That interest may be at its greatest where, as here, public funds are spent. The Act provides for narrow classes of records that may be closed from public inspection. None of these exceptions applies to the Agreement here, a severance contract with no unusual or atypical kinds of terms and conditions. The trial court erred in denying plaintiffs' petition for injunctive relief.

The judgment of the trial court is reversed, and the cause remanded to the trial court with the direction to order the Board of Education of the Parkway School District to make available to plaintiffs for their inspection the Settlement Agreement and any other records pertaining to payments made to Leonard T. Burns pursuant to that Agreement.

STEPHAN and GRIMM, JJ., concur.