**PULITZER PUBLISHING COMPANY,**
Appellant,

v.

**MISSOURI STATE EMPLOYEES'
RETIREMENT SYSTEM,**
Respondent.

**No. WD 51578.**

Missouri Court of Appeals,
Western District.

June 25, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 30, 1996.

Application to Transfer Denied
Sept. 17, 1996.

Robert B. Hoemeke, Eric D. Paulsrud, Lewis, Rice & Fingersh, St. Louis, for appellant.

Allen D. Allred, Lawrence C. Friedman, Patricia L. Cohen, Thompson & Mitchell, St. Lewis, for respondent.

Before HANNA, P.J., and SMART and ELLIS, JJ.

ELLIS, Judge.

Pulitzer Publishing Company, Inc. ("Pulitzer") brought this action against the Missouri State Employees' Retirement System ("MOSERS") in the Circuit Court of Cole County seeking an injunction and a declaratory judgment. Pulitzer prayed for an injunction directing MOSERS to make available for its inspection certain records related to the pensions paid to various former Missouri state officials. It also sought a declaration that a regulation promulgated by MOSERS, 16 CSR 30–2.120, upon which MOSERS relied in denying its request for records, was invalid. MOSERS moved to dismiss the petition. Thereafter, the motion was argued, and on August 24, 1995, the trial court entered an order dismissing the petition for failure to state a claim upon which relief could be granted. From the dismissal, Pulitzer perfected this appeal.

Pulitzer's petition contained the following allegations. Pulitzer is a corporation organized under the laws of the State of Missouri with its principal business office and place of business in the city of St. Louis. It owns and publishes the *St. Louis Post–Dispatch,* a daily newspaper. MOSERS is a body corporate and an instrumentality of the State, existing pursuant to § 104.320.[1] It is an administrative governmental, deliberative body under the direction of three or more appointed members having rule-making or quasi-judicial power, and therefore is a public governmental body for purposes of §§ 610.010 through 610.030 ("the Sunshine Law"). MOSERS is required to keep certain records sought by Pulitzer pursuant to § 104.480, and such records must be open to inspection by any Missouri citizen at all reasonable times pursuant to § 109.180 ("the Public Records Law"). There is no provision in either the Sunshine Law or the Public Records Law which authorizes or requires that such records be held confidential. The Sunshine Law requires that the records retained by MOSERS be open to the public for inspection and copying unless an exception applies. Electronic or written records maintained by MOSERS regarding receipts and/or disbursements to individual members are public records for purposes of the Sunshine Law.

The petition further alleged that on June 13, 1994, Virginia Young, a reporter for the *St. Louis Post–Dispatch,* made a written request of MOSERS to disclose the amount of pension payments, length of service, salary history and dates of pension payments made to former Governors Warren Hearnes and Christopher S. "Kit" Bond, former House Speakers Richard J. Rabbitt and Kenneth J. Rothman, and former Senate Presidents Pro Tem Earl R. Blackwell and William J. Cason. On the same day, MOSERS acknowledged receipt of the request, and thereafter, on June 29, 1994, it refused to produce the requested information stating that "MOSERS would be precluded from providing . . .

---

1. All statutory references are to RSMo 1994, unless otherwise noted.

the records ... requested under Section 610.021(13) and (14) and 16 CSR 30–2.120." On July 1, 1994, Jim Moseley, a reporter for the *St. Louis Post–Dispatch,* made a written request of MOSERS to provide computerized records pertaining to active and inactive members of MOSERS. On July 12, 1994, MOSERS refused to produce the requested information for the same reasons set out above. The petition further alleged that there was nothing in Chapter 104 ("Retirement of State Officers and Employees") or the Sunshine Law authorizing that such records be held confidential, and that 16 CSR 30–2.120, a regulation promulgated by MOSERS which declares, *inter alia,* that the records of members of MOSERS are confidential, exceeds the statutory authority conferred on MOSERS and is therefore unlawful. Pulitzer went on to allege that the closure of the records it sought violated both the Sunshine Law and the Public Records Law. Pulitzer prayed in Count I for a judgment declaring 16 CSR 30–2.120 invalid and in Count II for an injunction compelling MOSERS to produce the requested records, as well as for its attorneys' fees and costs.

As noted earlier, MOSERS filed a motion to dismiss which, after argument, the trial court sustained, finding that the petition failed to state a claim upon which relief could be granted. The trial court did not recite any specific grounds for its decision.

█ In reviewing the dismissal of a petition, we determine if the facts pleaded and the inferences reasonably drawn therefrom state any ground for relief. *Martin v. City of Washington,* 848 S.W.2d 487, 489 (Mo. banc 1993). A motion to dismiss for failure to state a claim upon which relief can be granted is solely a test of the adequacy of the plaintiff's petition. *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 306 (Mo. banc 1993). For purposes of the motion, all averments in the petition are assumed to be true and are construed liberally and favorably to the plaintiff. *Id.*; *Martin,* 848 S.W.2d at 489. No effort is made to weigh any of the factual allegations to determine whether they are credible or persuasive. *Nazeri,* 860 S.W.2d at 306. Rather, "the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Id.*

On appeal, Pulitzer argues one point, claiming the court erred in dismissing the petition because the records sought are public records under the Sunshine Law, not within any exception or exemption, in that (a) the records are public records because they are maintained by a public governmental body, MOSERS; (b) the records do not fall within the "otherwise provided by law" exception because that provision applies only to statutes and not regulations; and (c) the records do not fall within the exemption for "individually identifiable personnel records" because the exemption does not extend to "names, positions, salaries and length of service," and pension benefits fall within the definition of salaries. *Amicus Curiae* Missouri Press Association echoes this position in its brief.

MOSERS counters by arguing, as it did in the trial court, that it had the statutory authority to adopt its regulation, 16 CSR 30–2.120; that the regulation is valid and as such falls within the accepted definition of a "law" as used in § 610.021(14); and that therefore, under § 610.021(14), the requested records "are protected from disclosure by law." Secondarily, MOSERS asserts the records sought are "individually identifiable personnel records," which it has the right not to disclose pursuant to § 610.021(13).

Section 610.011 provides:
1. It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law. Sections 610.010 to 610.028 shall be liberally construed and their exceptions strictly construed to promote this public policy.
2. Except as otherwise provided by law, all public meetings of public governmental bodies shall be open to the public as set forth in section 610.020, all public records of public governmental bodies shall be open to the public for inspection and copying as set forth in sections 610.023 to 610.026, and all public votes of public gov-

ernmental bodies shall be recorded as set forth in section 610.015.

Section 610.021 enumerates exceptions to § 610.011. In pertinent part, § 610.021 provides:

> Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close meetings, records and votes, to the extent they relate to the following:

> \*    \*    \*    \*    \*    \*

> (13) Individually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment, except that this exemption shall not apply to the names, positions, salaries and lengths of service of officers and employees of public agencies once they are employed as such;

> (14) Records which are protected from disclosure by law;

■ The parties concede that MOSERS is a public governmental body and that the information requested is a public record for purposes of § 610.011.[2] As stated earlier, MOSERS' denial of Pulitzer's request for information was premised on two theories, the first being that 16 CSR 30–2.120, a regulation adopted by MOSERS pursuant to its rule-making authority,[3] prohibited disclosure of the requested information,[4] and therefore, the records were "protected from disclosure by law" under § 610.021(14).

While MOSERS' contention is imaginative, it must fail as a basis for denying Pulitzer's requests. "It is well settled that a regulation may not conflict with a statute and if it does the regulation must fail." *Johnson v. Labor*

& *Indus. Relations Comm'n,* 591 S.W.2d 241, 244 (Mo.App. W.D.1979). MOSERS, like an administrative agency, is a creature of statute and, as such, has only such authority as is delegated to it by the legislature. *Missouri Hosp. Ass'n v. Air Conservation Comm'n,* 874 S.W.2d 380, 397 (Mo.App. W.D. 1994). Rules and regulations may be promulgated only to the extent of and within the authority delegated by the legislature. *Id.* "Rules are void if they are beyond the scope of the legislative authority conferred upon the state agency or if they attempt to extend or modify statutes." *Missouri Hosp. Ass'n v. Missouri Dep't of Consumer Affairs, Regulation & Licensing,* 731 S.W.2d 262, 264 (Mo.App. W.D.1987).

A review of §§ 104.312–104.552, the statutory provisions creating and providing for operation of MOSERS, reveals that there is no statutory authority for the proposition that MOSERS' records are confidential and not subject to disclosure. The only provision even remotely relating to the subject is § 104.440.1, which requires the board of trustees to set up and maintain a benefit fund account in which all funds shall be deposited. It goes on to provide that the funds "shall be dedicated to and held in trust for the members...." MOSERS argues that this creates a fiduciary relationship between it and its members, and as a result, it has a fiduciary duty to keep all information confidential. Thus, according to MOSERS, it had authority to adopt 16 CSR 30–2.120, making the regulation valid, and therefore, that regulation has the force of and is a provision of "law." As a result, MOSERS reasons, the "[r]ecords are protected from

---

2. We note that § 610.021(13) provides that the exemption does not apply "to the names, positions, salaries and lengths of service of officers and employees of *public agencies.* ..." Since the parties make no argument on the issue, we assume, without deciding, that a "public agency" for purposes of § 610.021(13) is equivalent to a "public governmental body" as defined in § 610.010(4).

3. Section 104.500 vests the general administration and responsibility for operation of the Missouri State Employees' Retirement System in a board of trustees. Section 104.500(2) provides, in pertinent part:

2. Subject to the limitations of law, the board shall formulate and adopt rules and regulations for the government of its own proceedings and for the administration of the system, ...

4. The relevant portion of 16 C.S.R. 30–2.120 states:

The records of members of the Retirement System are confidential and shall not be disclosed to any person, except pursuant to a written request by, or with the prior written consent of, the member to whom the record pertains, ...

disclosure by law," § 610.021(14), and it acted properly in denying Pulitzer's requests.

We readily agree that MOSERS holds all funds coming into its hands in trust for its members. However, this does not necessarily imply that it has authority to adopt a regulation closing its records. Such would be contrary to the express terms of § 104.480 which requires the board to "keep a complete record of all its proceedings, which shall be open at all reasonable hours to the inspection of any member."

MOSERS exceeded its authority in adopting 16 CSR 30–2.120, and therefore, the regulation is invalid. To hold otherwise would be to permit MOSERS or any other public governmental body to defeat the legislature's declared public policy of open meetings and records merely by adopting a regulation designating the body's meetings and records confidential. This would be using regulatory authority to overrule statutory law, which is clearly impermissible. *Johnson*, 591 S.W.2d at 244. Moreover, even if the regulation was valid, it has been held that the "except as otherwise provided by law" provision in § 610.015, "means except as otherwise provided by statute." *Oregon County R–IV School Dist. v. LeMon*, 739 S.W.2d 553, 557 (Mo.App. S.D.1987). The *LeMon* court went on to say that § 610.015 "requires, in effect, that public records be open to the public for inspection and duplication unless a *statute* ... prohibits their disclosure." *Id.* (emphasis added). While the *LeMon* court was interpreting the language of § 610.015, which provides that "except as otherwise provided by law, all votes shall be recorded, ..." it was dealing with the same concept as contained in § 610.021(14) regarding records "protected from disclosure by law." We find the court's reasoning applicable to the latter section, and therefore, MOSERS' argument would fail even if its regulation were valid.

■ MOSERS' second rationale for denying Pulitzer's request was that pension information is an "identifiable personnel record" and as such is exempt from disclosure pursuant to § 610.021(13) "except that this exemption shall not apply to the names, positions, salaries and lengths of service...." § 610.021(13). The parties generally con-cede that pension records are "identifiable personnel records" for purposes of § 610.021(13). However, they dispute whether pension benefits are encompassed in the term "salaries" as used within that section. In support of its position, Pulitzer cites *Librach v. Cooper*, 778 S.W.2d 351 (Mo.App. E.D.1989). In *Librach*, the governmental body refused to disclose the amount of severance pay provided to a former employee. The court held that such payments fell within the meaning of the term "salary." In doing so, the court stated:

> Moreover, this provision authorizing closure of personnel records, excepts "salaries" from this authorization. The Board attempts to limit this language by distinguishing severance payment from salary....

> This attempt to limit the meaning of the term "salary", as used in this statute, narrowly defines it, when the meaning should be broadly construed.... The reasoning used by the Board to separate and disconnect the Burns' severance payment here from his salary requires nice distinctions appreciated by ancient practitioners at the bar but never understood or accepted by the public. Furthermore, to limit the word "salary" in its present context, as the Board suggests, would mean other remunerations not limited to severance payments, such as travel expenses, provided by the governmental body could be effectively concealed from public scrutiny.

*Id.* at 356. Based on the *Librach* holding, Pulitzer asserts that pension benefits are no different than severance payments, and should likewise be included in the meaning of the word "salaries" as used in § 610.021(13).

MOSERS counters by asserting that the *Librach* rationale is inapplicable to pension benefits. It agrees that the severance pay in *Librach* did come from the "public coffers" as asserted by Pulitzer. However, MOSERS contends that it is a trust, that the pension benefits are paid out of trust funds, and that those trust funds include "payroll deductions, deferred compensation, payments and income from all sources." § 104.440(1). Moreover, MOSERS points out that while public money is appropriated and paid over to

MOSERS for pension benefits, some MOSERS members are not paid from state treasury funds and their employers make payments directly to MOSERS. § 104.436. Once these funds are paid to MOSERS, they are "dedicated to and held in trust for the members and for the purposes set out and no other," § 104.440(1), and thus pension benefits paid to members are not paid from public funds, but rather from trust funds which are the property of the members of the system. Thus, MOSERS argues the pension benefits it pays to its members are substantially different from a state employee's salary, a former employee's severance pay, or other forms of remuneration paid to state personnel directly from public funds.

Statutory interpretation is a question of law. *Staley v. Missouri Director of Revenue,* 623 S.W.2d 246, 248 (Mo. banc 1981). When interpreting a statute, our primary role is to ascertain the intent of the legislature from the language used in the statute and, whenever possible, to give effect to that intent. *Sullivan v. Carlisle,* 851 S.W.2d 510, 512 (Mo. banc 1993). In determining legislative intent, the words used in the statute are to be considered in their plain and ordinary meaning. *Trailiner Corp. v. Director of Revenue,* 783 S.W.2d 917, 920 (Mo. banc 1990). "Further insight into the legislature's object can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of enactment." *Sermchief v. Gonzales,* 660 S.W.2d 683, 688 (Mo. banc 1983); *see also Schneider v. Missouri Division of Water Safety,* 748 S.W.2d 677, 678 (Mo. banc 1988) ("The legislative intent and meaning of the words can, in many instances, be found in the general purposes of the legislative enactment.").

The term "salary" is defined as "a fixed payment at regular intervals *for services.*" *Webster's New Twentieth Century Dictionary* 1598 (2d ed.1979) (emphasis added). In *St. Louis Fire Fighters Ass'n, Local No. 73, AFL–CIO v. City of St. Louis,* 637 S.W.2d 128 (Mo.App. E.D.1982), the court stated:

"Salary" is a specific form of compensation. *State ex rel. Buchanan County v. Imel,* 242 Mo. 293, 146 S.W. 783, 785 (1912).

Salary is a periodic allowance made as compensation to a person for his official or professional services or his regular work. *Henderson v. Koenig,* 168 Mo. 356, 68 S.W. 72, 75 (banc 1902).

*Id.*

"Pension," on the other hand, is generally defined as "a payment, not wages, made regularly to a person (or to his family) who has *fulfilled certain conditions of service, reached a certain age,* etc." *Webster's New Twentieth Century Dictionary* 1326 (2d ed.1979) (emphasis added).

In common parlance, a pension is an allowance made to one who is retired from service and paid on account of the retiree's past work. A pension is in the nature of an annuity for past services. . . .

\* \* \* \* \* \*

A pension is distinguishable by the salient feature of being payable on retirement.

*First Bank of Commerce v. Labor & Indus. Relations Comm'n,* 612 S.W.2d 39, 45 (Mo. App. W.D.1981) (citations omitted).

From the foregoing, it is clear, and we would have no hesitation in holding in virtually any other factual setting, that the word "salary," when given its plain and ordinary meaning, does not include, incorporate or otherwise encompass the term "pension." The former generally refers to compensation for services or work performed by a current employee; the latter customarily relates to payments made to a retired person based on the number of years of past service. However, in the case *sub judice,* we are interpreting what is commonly referred to as "The Sunshine Law," and § 610.011 thereof declares that the public policy of this state is that records of public governmental bodies be open to the public. Moreover, the same section requires that the law be liberally construed and that the exceptions thereto be strictly construed "to promote this public policy." § 610.011(1).

In *Ivie v. Missouri Dep't of Social Servs.,* 793 S.W.2d 212 (Mo.App. S.D.1990), the court, after observing that § 1.010 requires that all statutes be liberally construed "so as

to effectuate the true intent and meaning thereof," *id.* at 215, stated:

> As stated in *State v. Schwartzmann Service, Inc.*, 225 Mo.App. 577, 581, 40 S.W.2d 479, 480 (1931), "[i]t is a cardinal rule, universally accepted, that, in the exposition of a statute, the intention of the lawmaker will prevail over the literal sense of the terms; its reason and intention will prevail over the strict letter." And, in *State ex rel. Zoological Park Subdistrict, St. Louis v. Jordan*, 521 S.W.2d 369, 372 (Mo.1975), "[t]he basic rule of construction of a statute is to seek the intention of the legislature [citation omitted], which when possible shall be ascertained from the words used by giving them their usual, plain and ordinary meaning so as to promote the object and manifest purpose of the statute."

*Id.* Applying these principles, and acknowledging that the literal sense of the term "pension" is not encompassed in the word "salary," a review of §§ 610.010–610.028 nevertheless compels the conclusion that the reason and intention of the legislature was to require disclosure of the same information about retirees as is required to be disclosed about current state officers and employees. In other words, in adopting § 610.021(13), the legislature was concerned about the privacy rights of state officers and employees, including retired and former state officers and employees. Thus, it authorized public governmental bodies to close the individually identifiable personnel records of current and past state officers and employees. However, recognizing the public's overriding interest in knowing how its tax money is spent, the legislature went on to provide that the exemption for such personnel records did not include "the names, positions, salaries and lengths of service of officers and employees of public agencies...." § 610.021(13). A balance was struck between the officers' and employees' right of privacy, and the public's need to know how its tax dollars are being spent. Obviously, since retirees' privacy rights are protected to the same extent as those of current officers and employees, it is clear the legislature intended that the same information about retirees be disclosed as is required for active state officers and employees. Thus, even if a portion of the pension benefit paid by MOSERS to a retired state employee is derived from sources other than state taxes, i.e., investment income, the legislature determined that the public is entitled to know, and MOSERS is required to provide, if it has the information, the name, position, pension amount, and length of service of members who are receiving benefits, or have in the past. MOSERS may close all other individually identifiable personnel information, including but not limited to, the addresses and telephone numbers of members, thereby minimizing the risk of exploitation of vulnerable, elderly retirees by unscrupulous elements who might request blanket information for inappropriate purposes.

Based on the foregoing, it is apparent the trial court erred in dismissing Pulitzer's first amended petition. Therefore, the trial court's order of dismissal is reversed, and the case is remanded for further proceedings.

All concur.