STATE of Missouri, ex rel. Gregory F.X. DALY, in his official capacity as Collector of Revenue of the City of St. Louis, and Jennifer M. Joyce, in her official capacity as Circuit Attorney of the City of St. Louis, Relators/Appellants/Cross–Respondents,

v.

INFORMATION TECHNOLOGY SERVICES AGENCY OF THE CITY OF ST. LOUIS and Kathy Doerr, in her official capacity as the Custodian of Records for Information Technology Services Agency of the City of St. Louis, Respondents,

and

St. Louis Post–Dispatch, Intervenor/Respondent/Cross–Appellant.

No. ED 98789.

Missouri Court of Appeals, Eastern District, Division Two.

Oct. 15, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 2013.

Application for Transfer Denied Feb. 4, 2014.

Gerard T. Carmody, David H. Luce, Laura Bailey Brown, St. Louis, MO, for Relators/Appellants/ Cross–Respondents.

Patricia A. Hageman, Michael A. Garvin, Christine L. Hodzic, St. Louis, MO, for Respondents.

Joseph E. Martineau, Benjamin A. Lipman, Tessa B. Schneider, St. Louis, MO, For Intervenor/Respondent/ Cross–Appellant.

SHERRI B. SULLIVAN, Judge.

*Introduction*

The State of Missouri, ex rel. Gregory F.X. Daly, in his official capacity as the Collector of Revenue of the City of St. Louis (Collector) and Jennifer M. Joyce, in her official capacity as the Circuit Attorney for the City of St. Louis (Circuit At-

torney) (collectively Relators) and the St. Louis Post–Dispatch (Newspaper) appeal from the June 25, 2012 Order and Judgment entered by the circuit court on Relators' Petition in Mandamus and the Counterclaim for Declaratory Judgment filed by Information Technology Services Agency of the City of St. Louis (ITSA) and Kathy Doerr, in her official capacity as the Custodian of Records for ITSA against Relators and Cross–Claim against Intervenor Newspaper. We reverse in part and affirm in part.

*Factual and Procedural Background*

On November 23, 2010, Newspaper submitted a Sunshine Law request to the office of the Comptroller for the City of St. Louis (the Comptroller), asking for the 2009 and 2010 payroll records of all employees paid through the Comptroller's payroll system (payroll records). On November 29, 2010, the Comptroller told Newspaper that it had received approval of the City Counselor to fulfill Newspaper's request and was working with ITSA to do so.

ITSA is a public governmental agency created pursuant to St. Louis City Ordinance 65798 "responsible for the planning, development, coordination and implementation of timely, reliable, cost-effective municipal technology and information services for use by City government and City employees, citizens and businesses." The purpose of ITSA is to serve both City agencies and the public, using technology to assist other City departments as they deliver services to the public, and its services include computer support, programming and website administration. See *http://stlouis-mo.gov/government/ departments/information-technology/.*

ITSA supplies technological support services for assorted databases, including payroll information, owned by its government clients, including Relators, the City of St. Louis, and other public agencies. Relators pay an annual fee to the City of St. Louis in exchange for ITSA's processing of a variety of their electronic data, including payroll.

Specifically, the city agencies that use ITSA's services to generate their payroll give payroll data to the Comptroller, who in turn gives it to ITSA. This payroll data generally includes name, social security number, address, rate of pay, and hours worked. ITSA enters the data into its program, launches its program to process the data, and then delivers the results back to the Comptroller. The Comptroller provides the data to the individual city agencies, which check the results for accuracy, make any corrections, and give the data back to the Comptroller who gives it to ITSA. The corrected data is processed again by ITSA's program which generates a file of the processed data. This file is submitted to the City's Treasurer who electronically transmits the payroll funds to the bank to cause the city agencies' employees to be paid.

ITSA advised Newspaper that it had all of the requested payroll records in its possession but some city agencies wanted Newspaper to secure their consent in releasing their respective employees' records via their custodians of records. Accordingly, on January 5, 2011, Newspaper requested the consent of the custodians of records of certain city agencies [1] for ITSA to release their employees' payroll records. Relators, via letters sent January 10 and 12, 2011, from the Collector's office and the Circuit Attorney's office, respectively,

---

**1.** These agencies include the Board of Aldermen, Circuit Attorney, Circuit Clerk, Collector of Revenue, License Collector, Public Administrator, Recorder of Deeds, Sheriff, Treasurer, Board of Police Commissioners and Circuit Court.

advised Newspaper they would produce the requested records upon Newspaper's payment of the nominal search and copying fees called for by statute. Newspaper never tendered the funds of $315.00 and $949.38, respectively, nor procured the records from Relators.

On February 4, 2011, ITSA agreed to release payroll records for 22 city agencies. ITSA did not release payroll records for 10 city agencies,[2] which included Relators.

On September 26, 2011, Newspaper made a "final" Sunshine Law request to ITSA for all city agencies' public employees' payroll records. On September 29, 2011, ITSA notified Newspaper and all city agencies that it intended to produce all payroll records it possessed on October 7, 2011, unless legal action was taken to stop it. On October 5, 2011, Relators filed a Petition in Mandamus in the Circuit Court of the City of St. Louis seeking a preliminary and permanent writ of mandamus to prohibit ITSA from producing payroll records relating to their respective employees. On October 6, 2011, the circuit court issued a Preliminary Order in Mandamus. On October 7, 2011, ITSA provided the payroll records for all city agencies other than Relators to Newspaper. Newspaper intervened in the mandamus action and filed an Answer and Suggestions in Opposition to the Petition in Mandamus. On October 27, 2011, ITSA moved to quash the Preliminary Order in Mandamus. ITSA also filed a Declaratory Judgment counterclaim against Relators and cross-claim against Newspaper raising two issues, each of which is subject to a point in this appeal: (1) whether ITSA must provide, upon Newspaper's request, payroll data of employees of public agencies other than itself which it has in its possession for data processing purposes; and (2) whether records reflecting accrued vacation pay, compensatory time and sick pay for public employees (accrued pay records) are public salary records subject to disclosure pursuant to the Sunshine Law.

The parties agreed that a ruling on ITSA's declaratory judgment claims would resolve the other claims in the action. On June 25, 2012, the circuit court issued an Order and Judgment holding (1) the payroll records may be obtained from ITSA through a request to ITSA's Custodian of Records, and (2) pay records for accrued sick time, vacation time and compensatory time are not open records. This appeal follows.

### Standard of Review

■ The standard of review in a declaratory judgment case is the same as in any other court-tried case. *Guyer v. City of Kirkwood,* 38 S.W.3d 412, 413 (Mo.banc 2001). The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

Statutory interpretation is an issue of law that we review *de novo. Spradling v. SSM Health Care St. Louis,* 313 S.W.3d 683, 686 (Mo.banc 2010). Our task in statutory interpretation is to discern the intent of the legislature from the language used. *Id.* In doing so, we consider the language's plain meaning. *Id.*

### Payroll Records

In their point on appeal, Relators contend the circuit court erred in finding their payroll records processed by ITSA are

---

**2.** These ten agencies were comprised of the Board of Aldermen, Circuit Attorney, Circuit Clerk, Collector of Revenue, License Collector, Recorder of Deeds, Sheriff, Treasurer, Board of Police Commissioners and Circuit Court.

subject to a Sunshine Law request directed to ITSA, thus requiring ITSA to produce the records, because the court misapplied the Sunshine Law in that the law places an unequivocal, exclusive right and duty on Relators to receive, review, and respond to such requests, and excluding them from the process of producing the records is inconsistent with legislative intent and sound public policy.

Section 610.023,[3] titled "Records of governmental bodies to be in care of custodian, duties-records may be copied but not removed, exception, procedure-denial of access, procedure," provides:

1. Each public governmental body is to appoint a custodian *who is to be responsible for the maintenance of that body's records.* The identity and location of a public governmental body's custodian is to be made available upon request.

2. Each public governmental body shall make available for inspection and copying by the public of *that body's* public records. No person shall remove original public records from the office of a public governmental body or its custodian without written permission *of the designated custodian.* No public governmental body shall, after August 28, 1998, grant to any person or entity, whether by contract, license or otherwise, the exclusive right to access and disseminate any public record unless the granting of such right is necessary to facilitate coordination with, or uniformity among, industry regulators having similar authority.

3. Each request for access to a public record shall be acted upon as soon as possible, but in no event later than the end of the third business day following the date *the request is received by the custodian of records of a public govern-*

*mental body.* If records are requested in a certain format, the public body shall provide the records in the requested format, if such format is available. If access to the public record is not granted immediately, the custodian shall give a detailed explanation of the cause for further delay and the place and earliest time and date that the record will be available for inspection. This period for document production may exceed three days for reasonable cause.

4. If a request for access is denied, *the custodian shall provide,* upon request, a written statement of the grounds for such denial. Such statement shall cite the specific provision of law under which access is denied and shall be furnished to the requester no later than the end of the third business day following the date that the request for the statement is received.

(Emphasis added.)

In the instant case, the issue is whether Relators' payroll records processed by ITSA are subject to a Sunshine Law request directed to ITSA.

When interpreting a statute, the plain and ordinary meaning of the words is considered. *Anderson v. Village of Jacksonville,* 103 S.W.3d 190, 195 (Mo.App.W.D. 2003). The primary rule of statutory construction is to ascertain the intent of the Legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning. *Id.* The entire statute should be construed to determine legislative intent, and all provisions should be harmonized, if reasonably possible. *Id.*

The language used in Section 610.023 makes clear that a public agency's custodian of records is responsible for the care and keeping of that agency's records.

---

3. All statutory references are to RSMo 2006, unless otherwise indicated.

"Each public governmental body is to appoint a *custodian who is to be responsible for the maintenance of that body's records.*" Section 610.023.1 (emphasis added). That responsibility of care and keeping includes the proper dissemination of those records. "No person shall remove original public records from the office of a public governmental body or its custodian *without written permission of the designated custodian.*" Section 610.023.2 (emphasis added). The request for access to the records of a specific public agency, such as the Collector or the Circuit Attorney, shall be acted upon *when the request is received by the custodian of records.* Section 610.023.3 (emphasis added).

■ The plain and ordinary meaning of these words reveals the intent of the General Assembly in enacting this statute that the custodian of records of an agency is the gatekeeper of that agency's records. The wording of the statute makes clear that a public agency's custodian of records is *responsible* for a request for *that agency's* records. The Sunshine Law requires each public governmental body to appoint a custodian of its records and, upon request, make available the custodian's identity and location. Section 610.023.1. It has been held that the failure to comply with the statute's command to designate a custodian of records is in itself a violation of the Sunshine Law. *State ex rel. Moore v. Brewster,* 116 S.W.3d 630, 643 (Mo.App. E.D.2003). "By statute, therefore, the custodian of records is identified as the single recipient for all requests for access to a governmental body's records." *Pennington v. Dobbs,* 235 S.W.3d 77, 79 (Mo. App.S.D.2007); *Anderson,* 103 S.W.3d at 198. Therefore, ITSA is not required to produce the records of Relators and, in fact, we read the statute as prohibiting ITSA from the dissemination of records of any agency other than those of ITSA itself.

Buttressing the above statutory construction is the language in Section 610.027, titled "Violations-remedies, procedure, penalty-validity of actions by governing bodies in violation-governmental bodies may seek interpretation of law, attorney general to provide," which provides remedies for violations of the Sunshine Law:

... Any aggrieved person, taxpayer to, or citizen of, this state, or the attorney general or prosecuting attorney, may seek judicial enforcement of the requirements of sections 610.010 to 610.026. Suits to enforce sections 610.010 to 610.026 shall be brought in the circuit court for the county in which the public governmental body, has its principal place of business. Upon service of a summons, petition, complaint, counterclaim, or cross-claim in a civil action brought to enforce the provisions of sections 610.010 to 610.026, *the custodian of the public record that is the subject matter of such civil action* shall not transfer custody, alter, destroy, or otherwise dispose of the public record sought to be inspected and examined, notwithstanding the applicability of an exemption pursuant to section 610.021 or the assertion that the requested record is not a public record until the court directs otherwise.

(Emphasis added.) This section again demonstrates the legislature's clear intent that the custodian of records *for the agency whose records are sought* has the responsibility of the dissemination or non-dissemination of those records. It does not stand to reason that ITSA's custodian of records should bear the responsibility as the gatekeeper of the personnel records of the employees of the Collector of Revenue or the Circuit Attorney in determining which records are or are not subject to the Sunshine law, and concomitantly bear the legal consequences of her decision thereto.

Importantly, ITSA functions merely as a data processor for Relators and other public entities that enroll its services. ITSA does not become a surrogate custodian of records under Section 610.023 for Relators or other public agencies when it has their personnel data in its possession for payroll data processing purposes.

We do not believe that the term "retain" is properly interpreted as broadly as the trial court found in this case. Rather, the proper recipient of a request for a particular agency's public records, or the public records "of that agency, is that agency's custodian of those records, as he or she is the one who has legal control over those records, as evidenced by Sections 610.023 and 610.027. The legislature has *required* individual agencies to appoint their own custodians of records for this very purpose and to perform the tasks set out in Section 610.023.1 necessary to comply with proper Sunshine Law requests. The legislature is presumed not to enact meaningless provisions. *Zimmerman v. Missouri Bluffs Golf Joint Venture*, 50 S.W.3d 907, 911 (Mo.App.E.D.2001).

ITSA is only a data processing agency. Data processing is defined as "the converting of raw data to machine readable form and its subsequent processing by a computer" and "the process of putting information into a computer so that the computer can organize it, change its form, etc." See *http://www.merriamwebster. com/dictionary/dataprocessing.* In the commercial world, data processing refers to the processing of data required to run organizations and businesses. It includes the conversion of raw data to machine-readable form, flow of data through the central processing unit (CPU) and memory to output devices, and formatting or transformation of output. Any use of computers to perform defined operations on data can be included under data processing.

We do not believe that merely receiving another agency's employee information to convert into a form that can be processed by a computer to generate a payroll for that agency constitutes "legal control" over said data as contemplated by the General Assembly, for purposes of "retaining" the information under the Sunshine Act. *See Brewster*, 116 S.W.3d at 637; *Tipton v. Barton*, 747 S.W.2d 325, 329 (Mo.App.E.D. 1988).

■ We recognize that, in circumstances other than those present here, a government agency may transmit its record to another governmental entity and a Sunshine Law request may be properly addressed to the governmental entity that received the record. *Missouri Protection and Advocacy Services v. Allan*, 787 S.W.2d 291 (Mo.App.W.D.1990). Governmental agencies often communicate with each other and we acknowledge that a document could be held as a record of more than one governmental agency. But in those circumstances, the agency that transmitted the record surrendered its sole custody of the record and the receiving entity retained it. Here, in contrast, Relators transmitted the records only to allow another agency to process their data. Again, this does not constitute retention of the information under the Sunshine Act.

Based on the foregoing, we find that the circuit court misapplied the Sunshine Law in ordering ITSA to respond to Sunshine Law requests directed to it to produce personnel payroll records of other public agencies. Relators' point is granted.

*Accrued Leave Pay*

■ In its point on cross-appeal, Newspaper maintains the circuit court erred in holding that accrued pay records of public employees are closed under the Sunshine Law, because such records are open in that they fit within the broad interpreta-

tion of salary records under Section 610.021(13), and the federal Health Insurance Portability and Accountability Act (HIPAA)[4] does not preempt otherwise applicable state open records laws like the Sunshine Law.

Section 610.011 provides:

1. It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law. Sections 610.010 to 610.028 shall be liberally construed and their exceptions strictly construed to promote this public policy.

2. Except as otherwise provided by law, all public meetings of public governmental bodies shall be open to the public as set forth in section 610.020, all public records of public governmental bodies shall be open to the public for inspection and copying as set forth in sections 610.023 to 610.026, and all public votes of public governmental bodies shall be recorded as set forth in section 610.015.

Section 610.021 enumerates exceptions to Section 610.011. In pertinent part, Section 610.021 provides:

Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close meetings, records and votes, to the extent they relate to the following:

. . .

(13) Individually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment, except that this exemption shall not apply to the names, positions, salaries and lengths of service of officers and employees of public agencies once they are employed as such; (14) Records which are protected from disclosure by law. . . .

The rule of statutory interpretation requires us to determine and give effect to the legislative intent of the Sunshine Law. *State ex rel. Goodman v. St. Louis Bd. of Police Com'rs*, 181 S.W.3d 156, 159 (Mo. App.E.D.2005). Our guides include the legislative purpose and text of the statute. *Id.* The legislative purpose of the Sunshine Law is for governmental conduct to be open to public inspection, but not at the expense of the vital personal interests of the citizenry. *Id.* It is the role of the legislature, and not the courts, to strike the delicate balance between these two competing interests. *Id.* The legislature conveys this balance and their intent to us through the express words and implied meaning of the statute. *Id.* We construe the words of the statute in their plain and ordinary meaning. *Id.*

In the instant case, the issue is whether pay records for accrued sick time, vacation time and compensatory time are open records subject to disclosure under the term "salary" or closed records not subject to disclosure under the terms "individually identifiable personnel records" or "protected from disclosure by law." We find that the records are open and subject to disclosure under the Sunshine Law when the accrued time is available to the employee in the form of a payment from state treasury funds or convertible into money coming from the "public coffers." See *Pulitzer Pub. Co. v. Missouri State Employees' Retirement System*, 927 S.W.2d 477, 482 (Mo.App.W.D.1996).

The public does not have a legitimate interest in knowing about leave time that is not convertible into money to be paid from the public coffers, whether it be because the leave time itself remains an option; the public agency does not have a policy or practice of reimbursing its em-

4. See 45 C.F.R. Parts 160 and 164 (2007).

ployees for unused leave; or another reason that takes it outside the simple, straightforward guideline we have set forth above, and makes the information protected under Sections 610.021(13) and/or (14). A Constitutional right to privacy has been recognized and extended to protect an individual's interest in preventing the disclosure of personal matters. *North Kansas City Hosp. Bd. of Trustees v. St. Luke's Northland Hosp.*, 984 S.W.2d 113, 121 (Mo.App.W.D.1998); *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

An example of this distinction is set out in *State ex rel. Mo. Local Gov't Retirement Sys. v. Bill*, 935 S.W.2d 659, 664 (Mo.App. W.D.1996). In BUI, the taxpayer sought certain information regarding benefits for particular city employees from the Local Government Employees Retirement System (LAGERS). Specifically, the taxpayer requested information regarding names of employees who had received a refund of their member contributions and the amount of those refunds. LAGERS sought a declaratory judgment as to whether it had to disclose the requested information under the Sunshine Act. The circuit court found that the records it examined *in camera* contained confidential information about LAGERS' employees' retirement benefits, including their health and pending retirement. On appeal, the Western District determined that the taxpayer only asked *what payment* LAGERS made to an individual, and not for personal information. The Court held the information *asked for* was not exempt from disclosure:

> In Section 610.024.1, the General Assembly mandated: "If a public record contains material which is not exempt from disclosure as well as material which is exempt from disclosure, the public governmental body shall separate the exempt and nonexempt material and make

the nonexempt material available for examination and copying." To the extent that the information [taxpayer] sought was contained in a record which also contained exempted information, LAGERS had an obligation to cull the requested information from the record and to disclose it.

*Id.* at 664.

In the instant case, Newspaper has made no such clear-cut distinction in its general request for "accrued pay records," nor is there enough information in the record as to what kind of leave time, i.e., sick, vacation, or compensatory, is convertible to money or accrued to determine what data is accessible under the general rule we have established. This general rule bears repeating as a guideline for those who serve as the gatekeepers of the sought-after information: To the extent the pay records sought by Newspaper contain information with regard to leave time that has accrued unused and is redeemable by the employee for money to be paid from state funds, that information is accessible because it becomes public record when the leave time is convertible into money paid by the taxpayers.

We find this rule sets forth a clear, simple, workable definition that serves a dual purpose and fits with the General Assembly's agenda in enacting the Sunshine Law. In adopting Section 610.021(13), the legislature was concerned about both the public's interest in knowing how its tax money is spent and about the privacy rights of state officers and employees. *Pulitzer Pub. Co.*, 927 S.W.2d at 482; *Librach v. Cooper*, 778 S.W.2d 351, 356 (Mo.App.E.D.1989). We find that the distinction made above satisfies the public policy of this State that the public knows where its dollars are spent, and also protects workers from disclosure of individu-

ally identifiable personnel records to which they have a right of privacy as containing personal information. See *Pulitzer Pub. Co.*, 927 S.W.2d at 483.

For the foregoing reasons, Newspaper's point is granted in part and denied in part in accordance with this opinion.

## Conclusion

The judgment of the circuit court is reversed in part and affirmed in part.

LAWRENCE E. MOONEY, P.J., and ROBERT G. DOWD, Jr., J., concur.