935 S.W.2d 659 (1996)
STATE of Missouri, ex rel. MISSOURI LOCAL GOVERNMENT RETIREMENT SYSTEM, Respondent,
v.
Josh BILL, Appellant.
No. WD 52083.
Missouri Court of Appeals, Western District.
October 15, 1996.
Motion for Rehearing and/or Transfer Denied November 26, 1996.
Application to Transfer Denied January 21, 1997.
*661 Deborah Buckner, Jefferson City, for appellant.
Audrey McIntosh, Jefferson City, for respondent.
Motion for Rehearing and/or Transfer to Supreme Court Denied November 26, 1996.
SPINDEN, Judge.
After Josh Bill asked the Missouri Local Government Employees Retirement System (LAGERS) to give him information about retirement benefits for employees of the Sikeston Board of Municipal Utilities, LAGERS filed a declaratory judgment action. It asked the court to declare whether it was obligated to provide the information under Chapter 610, RSMo 1994,[1] governing the public's access to the "meetings, records, votes, actions, and deliberations of public governmental bodies." Section 610.011.1.
The circuit court concluded that the information sought by Bill was exempted from disclosure by § 610.021 and that Bill lacked standing to seek enforcement of Chapter 610. Bill appeals. We reverse and remand.
The circuit court had a limited record with which to work. It did not convene a hearing, but relied primarily on two affidavits attached to Bill's motion for summary judgment and to LAGERS' response to that motion.
Bill attached an affidavit to his second motion for summary judgment which said:
1. At all times relevant to this action, I have been a citizen and taxpayer of the State of Missouri and a member of the Sikeston City Council. I am not an employee of the Sikeston Board of Municipal Utilities and am not a member of LAGERS.
2. On or about April 1, 1994, the Sikeston Board of Municipal Utilities eliminated member contributions and elected to refund those contributions to their employees under Section 70.707 RSMo Supp.1993.
3. Pursuant to requests under Section 70.070[sic] RSMo Supp.1993 from members who are also employees of the Sikeston Board of Municipal Utilities, LAGERS refunded and will continue to refund member contributions to employees based upon each individual's accumulated member contributions.
4. On June 21, 1994, I faxed a request for public records to the Executive Secretary of LAGERS requesting the names of the individuals, and the refund amount for each employee at the Sikeston Board of Municipal Utilities receiving a refund.
5. On or about June 24, 1994, LAGERS' counsel responded stating that LAGERS could not decide whether to provide access to the records requested and would be in a position either to provide access or deny access by July 29, 1994.
6. I requested my attorney to send a letter to LAGERS' counsel explaining the requirements of Missouri's Sunshine Law. On or about June 29, 1994, at 5:00 p.m., counsel for LAGERS informed my attorney by letter that LAGERS is "in doubt about the legality of closing its records" and "will be filing suit to ascertain the propriety of keeping such records closed."
7. LAGERS did not provide me with access to the requested records within three business days, did not provide a statutory exception authorizing it to deny access to the records within three business days, and did not show me any written policy stating that the records I requested are closed records.
8. In response to my request for access to public records, LAGERS filed a lawsuit against me, causing me to be served with process by officers of my county's sheriff's *662 department. Not only was I not provided with the records that I, as a citizen, have the right to inspect and copy, but I was subjected to the humiliation of finding the sheriff's representative at my doorstep and forced to hire an attorney to represent me in court.
LAGERS countered with an affidavit by William R. Schwartz, LAGERS' executive secretary. The affidavit said:
1. I am the Executive Secretary of LAGERS and am also the custodian of records for LAGERS under 16 CSR 20-1.010(3). I have personal knowledge of the facts that led to the findings of the ... case, the records of LAGERS, and LAGERS responsibilities and obligations, and I am competent to testify to the facts stated in this Affidavit.
2. I do not personally know Josh Bill. I understand that he made a request for information and that he gives a Missouri address in his fax of June 21, 1994, to me. I do not have any information available to me to indicate whether he is a taxpayer of the State of Missouri.
3. LAGERS is a body corporate, created under Section 70.605 RSMo Supp.1993. As its Executive Secretary, I serve as the Executive Officer of the Board of Trustees of LAGERS pursuant to Section 70.605.10 RSMo Supp.1993. I carry out the obligations and responsibilities of the Board.
4. LAGERS is in a fiduciary position to both the political subdivisions or employers and to the members or employees. In its fiduciary capacity, LAGERS receives detailed information from the political subdivision and from its members pertaining to individual employee's retirement benefits.
5. I believe in my fiduciary capacity of LAGERS, that I have an obligation and a duty to safeguard and keep confidential information received by LAGERS in its fiduciary capacity. I do not believe that it was ever contemplated by the legislature or member employees that LAGERS should provide detailed information about individual members to any member of the public, nor that such information could or should be obtained from LAGERS when the information is held in such a third-party fiduciary capacity.
6. General information is already made available to the public through LAGERS' annual report.
7. When I received the request from Josh Bill for information, I requested that my attorneys at Hawkins Law Offices provide me with advice concerning the request. By so stating, I am not waiving my attorney-client privileges.
8. Because it was necessary to discuss this matter with my attorneys, I was not in a position to grant access to the requested records immediately.
9. In my opinion, it is reasonable to be able to be afforded time to consult with an attorney. Therefore, through my attorneys, I responded to Mr. Josh Bill by stating the reason for the delay and what I was doing with the request. At no time did I tell Mr. Bill that access was being denied. On July 24, 1994, I had not received any request from Mr. Bill for a written statement of the grounds for denial, in the event access would be denied.
10. Because LAGERS had doubts about the legality of closing the particular record or records sought by Mr. Josh Bill, LAGERS filed a suit to request that the court declare the law under these circumstances.
11. LAGERS brought the suit in good faith to have particular questions answered, as set forth in paragraph 14 a) through f) of LAGERS' Petition. Because Mr. Bill had an interest in the declaration since he made the request, he was named as a party respondent.
12. LAGERS has not made a determination whether access will be provided to Mr. Bill and has asked the court for its assistance with this issue.
13. Disclosing requested information may have a broad impact. LAGERS has approximately 370 employer political members and approximately 28,000 employee members. If individually identifiable information concerning employee members is subject to being open information, there could be a reluctance to provide such personnel information to LAGERS. In this *663 instance, approximately 135 employee members may be affected by disclosure of this information. Because of the affect of this issue, LAGERS chose to request assistance from the court.
14. LAGERS maintains, receives and has in its files numerous types of records concerning its operations. Member employees and political subdivision employees often provide detailed information to LAGERS about health, disability, pending retirement and personnel information.
On August 11, 1995, LAGERS filed with the circuit court a set of "the records that are the subject of this declaratory judgment, together with information explaining the manner in which the records are kept[.]" LAGERS asked the circuit court for "an in camera review and determination as to whether such records are deemed to be open or closed records of [LAGERS]." We do not have copies of these documents.
After examining the documents, the circuit court issued on November 16, 1995, these findings of fact:
1. LAGERS is a body corporate, created under Section 70.605 RSMo Supp.1993, and a public governmental body pursuant to Chapter 610 RSMo Supp.1993.
2. Respondent, Josh Bill, is a citizen of the State of Missouri. He is not an employee of the Sikeston Board of Municipal Utilities and is not a member of LAGERS as those terms are defined in Section 70.600 RSMo Supp.1993.
3. LAGERS is in a fiduciary position to both the political subdivisions or employers, and to the members or employees. In its fiduciary capacity, LAGERS receives detailed information from the political subdivision and from its members pertaining to individual employee's retirement benefits, including health, disability, pending retirement and personnel information, which LAGERS has a duty to maintain and keep confidential. The Court has fully reviewed and inspected the requested records in camera.

4. The June 24, 1994, letter from LAGERS was provided within three business days and it contained a detailed explanation of the cause for further delay and the place and earliest time and date that the requested records could be accessed as required by Section 610.023.3 RSMo.
5. LAGERS neither receives nor expends state appropriations and is prohibited from receiving money from the State of Missouri to finance the retirement system pursuant to Section 70.740 RSMo; and is a body corporate under Section 70.605 RSMo.
6. LAGERS has duly promulgated 16 CSR 20-1.010(3), which identifies and names a custodian of records.
From these facts, the circuit court concluded:
Based upon the Court's in camera review of the type of records involved, the fact that no tax money is involved in the operation of LAGERS and because [Bill] is neither a member, employee or a political subdivision of LAGERS, the Court concludes [Bill] has no standing nor is he entitled to the requested records.
... The Court has reviewed the requested records and concludes that they constitute closed records of LAGERS under § 610.021(3), (5), (7), and (14) RSMo. LAGERS has an obligation to maintain confidentiality of records received in their fiduciary capacity that outweighs any individual request for such information.
Bill appeals.

Standing
In the first of four points on appeal, Bill contends that the circuit court erred in concluding that he lacked standing. Whether the circuit court did seems to be inconsequential and, therefore, is a moot issue. If the information Bill requested was not properly closed from disclosure, the circuit court was obligated to order LAGERS to disclose itwhether in response to Bill's counterclaim for enforcement[2] or whether in response to LAGERS' petition for declaratory judgment. Hence, the issue which is outcome *664 determinative in this case is whether the circuit court erred in concluding that the information requested by Bill was exempt from the open meetings and records law.

Closed Record
Section 610.015 mandates that "public records shall be open to the public for inspection and duplication." Section 610.021 permits the closing of records, but the General Assembly charged in § 610.011.1 that these exceptions be "strictly construed." "Chapter 610 embodies Missouri's commitment to open government and is to be construed liberally in favor of open government." Missouri Protection and Advocacy Services v. Allan, 787 S.W.2d 291, 295 (Mo. App.1990). Hence, public records must be presumed open to public inspection unless they contain information which clearly fits within one of the exemptions set out in § 610.021. Section 610.010(6) defines public record as "any record, whether written or electronically stored, retained by or of any public governmental body[.]" LAGERS does not challenge the circuit court's conclusion that it is a public governmental body.
In ruling that the information Bill requested was exempted from disclosure, the circuit court cited subsections (3), (5), (7),[3] and (14) of § 610.021. LAGERS asserted in its petition that subsection (13) also exempted the information, but the circuit court did not mention it. We shall still consider it on the assumption that the circuit court overlooked it.
Section 610.021(3) exempts records related to:
Hiring, firing, disciplining or promoting of particular employees by a public governmental body when personal information about the employee is discussed or recorded. However, any vote on a final decision, when taken by a public governmental body, to hire, fire, promote or discipline an employee of a public governmental body must be made available to the public within seventy-two hours of the close of the meeting where such action occurs; provided, however, that any employee so affected shall be entitled to prompt notice of such decision during the seventy-two-hour period before such decision is made available to the public. As used in this subdivision, the term "personal information" means information relating to the performance or merit of individual employees[.][4]
The records examined by the circuit court may have contained personal information about public governmental bodies' employees. We do not know because we do not have the benefit of examining the records ourselves. Whether they did is inconsequential, however, because Bill did not ask for personal information. What payment LAGERS made to an individual is not personal information.
The circuit court found that the records contained confidential information received by LAGERS from the political subdivision and from its members pertaining to individual employees' retirement benefits, including their health and pending retirement. Bill, however, did not want any of that information. He did not request any information relating to the hiring, firing, disciplining or promoting of employees.
In § 610.024.1, the General Assembly mandated: "If a public record contains material which is not exempt from disclosure as well as material which is exempt from disclosure, the public governmental body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying." To the extent that the information Bill sought was contained in a record which also contained exempted information, LAGERS had an obligation to cull the requested information from the record and to disclose it. See Oregon County R-IV School District v. LeMon, 739 S.W.2d 553, 556 (Mo.App.1987). The circuit court erred in resting its decision on § 610.021(3).
The circuit court did not explain its reliance on § 610.021(5) which exempts "[n]onjudicial *665 mental or physical health proceedings involving identifiable persons, including medical, psychiatric, psychological, or alcoholism or drug dependency diagnosis or treatment[.]" Bill did not request any information concerning the mental or physical health of any employees or any information pertaining to medical, alcohol or drug treatment. This exemption does not apply.
That brings us to § 610.021(13) which exempts:
Individually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment, except that this exemption shall not apply to the names, positions, salaries and lengths of service of officers and employees of public agencies once they are employed as such[.]
For the same reason outlined above in reference to § 610.021(3), we conclude that this statute did not exempt the information requested by Bill.
The circuit court did not explain its reliance on § 610.021(14) which exempts "[r]ecords which are protected from disclosure by law[.]" The term "law" has a particular meaning in this context: It refers to statutes. Id. at 557 (quoting Yates v. Casteel, 329 Mo. 1101, 49 S.W.2d 68, 69 (1932)). We find no other statutes exempting the information.
The circuit court emphasized in its decision that LAGERS' payments did not involve taxpayer funds. Bill disputes this, but it does not matter. The open meetings and records law recognizes that the public has an interest in seeing how its government operates generally, whether or not public funds are involved. This court's Eastern District has said that "Missouri law properly recognizes the public interest in an open government. That interest may be at its greatest where ... public funds are spent." Librach v. Cooper, 778 S.W.2d 351, 356 (Mo. App.1989). We agree that public funds may heighten public interest, but this does not mean that the public interest exists only when public funds are involved.
We also disagree with the circuit court's emphasis on LAGERS' fiduciary obligations. While LAGERS was obligated to protect the funds entrusted to it and to maintain and preserve its records, the open meetings and records law still obligates it to disclose information not exempted.

Other Issues Raised by Bill
We do not address any of the other issues raised by Bill on appealother than the attorney fees and costs issuebecause they do not appear to be consequential.[5] We have concluded that the circuit court should have ordered LAGERS to release the information to Bill. Whether Bill is correct concerning the other issues does not seem to afford him any further relief.

Attorney Fees and Costs
Finally, Bill contends that the circuit court erred in refusing to assess all costs and attorney fees against LAGERS. He argues that he was entitled to costs and attorney fees because LAGERS brought the declaratory judgment under § 610.027.5 which says that "[a] public governmental body which is in doubt about the legality of closing a particular... record ... may bring suit at the expense of that public governmental body [.]"[6]
The statute's language is ambiguous: Did the General Assembly intend for the phrase "at the expense" to mean that the public governmental body was to bear all of the litigation expenses, including the respondent's? Considering what the General Assembly was trying to achieve in its open meetings and records law, we conclude that it intended public governmental bodies to bear all of the litigation expenses when the bodies *666 choose to pursue a lawsuit. We reach this conclusion for two reasons.
First, interpreting the statute otherwise would render the phrase "at the expense of that public governmental body" mere surplusage: LAGERS already was obligated, before the statute's enactment, to bear its own expense of bringing a lawsuit. We should not interpret statutes in a way which will render some of their phrases to be mere surplusage. We must presume that every word of a statute was included for a purpose and has meaning. Hadlock v. Director of Revenue, 860 S.W.2d 335, 337 (Mo. banc 1993).
Second, § 610.011.1 says, "It is the public policy of this state that ... records ... of public governmental bodies be open to the public unless otherwise provided by law. Sections 610.010 to 610.028 shall be liberally construed ... to promote this public policy." Not requiring the public governmental body to bear Bill's expenses would open a means for public governmental bodies to thwart the public policy underlying the open meetings and records law. The agency would be free to "test" the determination of anyone requesting its records by filing a lawsuit, putting that person in the dilemma of not defending his or her request in court or enduring the significant expense of doing so.
Though LAGERS was in doubt about whether to disclose the information, a lawsuit was not the only option available to it. The statute authorized it to consult with its attorney or the attorney general instead of choosing costly litigation. So, under the mandate that we liberally construe provisions of the open meetings and records law to promote the public policy of openness, we conclude that when the General Assembly authorized a "suit at the expense of that public governmental body," it intended the public governmental body to bear all of the expense of the litigation, including the respondent's and including the respondent's expenses on appeal.
The issue then becomes what should be included in "expense." Does it include attorney fees? As this court has noted:
"The word (`expense') is one of somewhat varying significance, * * * As connected with litigation, the term may have, at least two meaningsthe one including the ordinary costs or taxable expenses, and the other the extraordinary costs also, such as agents' and attorneys' fees, etc." 25 C.J. 173 [35 C.J.S., Expense or Expenses, p. 207]. "It has no fixed definition. It is of varying signification and is dependent for its precise meaning upon its connection and the purpose to be accomplished by its use. It is comprehensive enough to include a wide range of disbursements. Standing alone, it is ambiguous." Pittsfield & N.A.R. Corporation v. Boston & A.R. Co., 260 Mass. 390, 157 N.E. 611, 614.
In re Mason, 203 S.W.2d 750, 756 (Mo.App. 1947). The court went on to note cases in which the phrases "all expenses" and "at its own cost" had been interpreted to include attorney fees. Id. at 756-57.
Given the mandate in this context that the open meetings and records law be liberally construed, we conclude that LAGERS was obligated to pay all of Bill's litigation expenses, including his reasonable attorney fees. We remand, therefore, for the circuit to determine the costs and reasonable attorney fees incurred by Bill and to enter an order requiring LAGERS to reimburse him for these expenses.
LOWENSTEIN, P.J., and SMART, J., concur.
NOTES
[1] All statutory citations refer to the 1994 Missouri Revised Statutes, unless otherwise indicated.
[2] Section 610.027.1 gives citizens standing to seek enforcement of the requirements of the open meetings and records law.
[3] Both parties agree that the subsection (7) exemption does not apply and we will, therefore, not address it.
[4] The emphasis was in the original.
[5] Bill argued, in addition to the other issues raised on appeal, that even if LAGERS was authorized to close records, it should not be able to deny access to the records requested because it failed to adopt a written policy exercising such statutory authority in violation of § 610.028; and that the circuit court erred in concluding that LAGERS complied with § 610.023 because LAGERS did not grant access to the requested records within three business days and gave no explanation of the cause for delay with the earliest time and date the records would be available or state that the records were closed.
[6] We added the emphasis.