

# In the Missouri Court of Appeals
## Western District

NATIONAL COUNCIL OF TEACHERS QUALITY, INC., )

     Appellant, )

v. )          WD76785

)

CURATORS OF THE UNIVERSITY OF MISSOURI, )     FILED: August 26, 2014

)

     Respondent. )

## APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY
### THE HONORABLE KEVIN CRANE, JUDGE

### BEFORE DIVISION FOUR: JAMES E. WELSH, CHIEF JUDGE, PRESIDING, LISA WHITE HARDWICK, JUDGE AND KEVIN HARRELL, SPECIAL JUDGE

The National Council for Teacher Quality (the "NCTQ") brought this action against the Curators of the University of Missouri (the "University") to compel the University to disclose course syllabi under Missouri's Sunshine Law. The circuit court found for the University, determining that the requested syllabi were exempted from disclosure under the Sunshine Law by the Federal Copyright Act, and this appeal followed. For reasons explained herein, the judgment of the circuit court is affirmed.

### FACTUAL AND PROCEDURAL HISTORY

The NCTQ is a private non-profit "policy and research organization that's working towards making sure that every child has an effective teacher." On June 29, 2012, the NCTQ submitted a request to the University, pursuant to the Sunshine Law, § 610.010 *et seq.*,[1] asking the University to produce various records, including "syllabi that students actually receive from their professors." In response, the University disclosed some of the requested documents but withheld the requested syllabi on the basis that the syllabi were exempt from disclosure under the Sunshine Law.

On October 1, 2012, the NCTQ filed a two-count Petition against the University. Count I asked the court to compel production of the course syllabi. Count II asked the court to impose civil penalties and attorneys' fees upon the University for knowingly and purposefully violating its obligations to provide access to public records, pursuant to Section 610.027.

On June 21, 2013, the circuit court held a hearing at which both parties presented evidence. On July 17, 2013, the court entered its Order and Judgment, finding for the University and, thus, denying the NCTQ access to the requested syllabi. The NCTQ appeals.

Additional facts will be provided as necessary during our analysis of the NCTQ's points on appeal.

## STANDARD OF REVIEW

On review of this court tried case, we must affirm the circuit court's judgment unless it is not supported by substantial evidence, it is against the weight of the

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement, unless otherwise indicated.

2

evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence and inferences in a light most favorable to the judgment and disregard all contrary evidence. *Id.* We must defer to the circuit court's determinations of fact and witness credibility. *Id.*

## ANALYSIS

"Missouri's Sunshine Law, Chapter 610, reflects the state's commitment to openness in government." *News-Press and Gazette Co. v. Cathcart*, 974 S.W.2d 576, 578 (Mo. App. 1998). "The Sunshine Law is to be liberally construed and exceptions strictly construed to promote open government." *Id.* Under the Sunshine Law, records of public governmental bodies shall be open to the public unless otherwise provided by law. §§ 610.011, 610.023.2. "A public record is defined generally in the Sunshine Law as including any record retained by any public governmental body." *City of Springfield v. Events Publ'g Co.*, 951 S.W.2d 366, 371 (Mo. App. 1997) (*citing* § 610.010(6)). Section 610.021 provides exceptions to open records, listing instances where a public governmental body is authorized to "close" its records to the public. Such exceptions, however, must be strictly construed. § 610.011. "'[P]ublic records must be presumed open to public inspection unless they contain information which clearly fits within one of the exemptions set out in § 610.021.'" *City of Springfield*, 951 S.W.2d at 371 (quoting *State ex rel. Mo. Local Gov't Ret. Sys. v. Bill*, 935 S.W.2d 659, 664 (Mo. App. 1996)).

Under Section 610.027.2, once a party seeking judicial enforcement of the Sunshine Law demonstrates that the body in question is subject to the Sunshine Law and has denied access to a record, the burden shifts to the governmental body to demonstrate that the record falls within one of the exceptions to the rule of disclosure.

3

In the instant case, the University is a "public governmental body" subject to the Sunshine Law. § 610.010(4)(a). Moreover, the University admitted that it withheld the requested syllabi from disclosure. Thus, the burden was on the University to demonstrate compliance with the Sunshine Law.

At trial, the University argued that the subject syllabi fell within Section 610.021(14), which authorizes a public governmental body to close "[r]ecords which are protected from disclosure by law." Specifically, the University's position was that its faculty members hold copyright ownership in their syllabi and, thus, that the syllabi's disclosure was protected by the Federal Copyright Act. 17 U.S.C. § 106(1), (3) (2012) (The Federal Copyright Act provides copyright owners the "exclusive rights to do and to authorize" reproduction and distribution of their copyrighted works.). Upon review of the evidence presented, the circuit court entered judgment, finding that the University "met its burden of persuasion to demonstrate compliance with" the Sunshine Law.

***Points I & IV — The Federal Copyright Act's Applicability to Section 610.021(14)***

In its first point, the NCTQ contends that the circuit court erred in entering judgment in favor of the University because the NCTQ "pleaded and proved that it was legally entitled to copies of [the University's classroom course syllabi]."[2] The NCTQ does not dispute that the faculty authors who wrote the requested syllabi own the

_____

[2] In its first point, the NCTQ also contends that the circuit court erred in entering judgment in favor of the University because the NCTQ "pleaded and proved that it was . . . entitled to recover costs and attorneys' fees." *See* § 610.027. Given our ultimate disposition in favor of the University, we need not address this issue.

4

copyright to those works.[3]  Rather, the NCTQ asserts that a "document is [not] 'protected from disclosure by law' by the mere fact that it is copyrighted."

First, the NCTQ relies heavily on the fact that "no Missouri case has ever suggested" that the Federal Copyright Act exempts copyrighted work from Sunshine disclosure.  The absence of case law, however, is the result of this issue never having been before the appellate courts of this state.  The fact that our courts have not addressed the interplay between the Federal Copyright Act and the Sunshine Law does not mean that the Copyright Act has no applicability to the instant case; rather, it simply means that this is a case of first impression.

Second, at oral argument, the NCTQ cited a handful of cases from other jurisdictions for the proposition that the Federal Copyright Act "has never" been used as a "shield" to deny requested documents in "any open records case."  We find the NCTQ's reliance on such authorities unpersuasive.  The courts of this state are not bound by decisions of foreign jurisdictions.  Moreover, none of the cases cited by the NCTQ hold that the Federal Copyright Act has no applicability in open records cases.  Rather, the cases cited by the NCTQ actually recognize that the Federal Copyright Act can affect disclosure of copyrighted materials in an open records request.  *Nat'l Council on Teacher Quality v. Minn. St. Colleges and Universities*, 837 N.W.2d 314, 318 (Minn. App. 2013) ("[Minnesota's open records law] states that 'comprehensive accessibility shall be allowed to researchers . . . except as otherwise expressly provided by law.'

---

[3] The University maintains rules concerning copyright ownership in materials developed by faculty in their roles as teachers.  Those rules are incorporated in faculty members' terms of employment.  Under the copyright rules, materials that faculty create as part of their coursework, including syllabi, belong to the faculty.  Additionally, when faculty share syllabi with the University -- for purposes such as accreditation, curriculum review, and promotion and tenure -- copyright ownership of syllabi is not transferred to the University.

The copyright act is such a law[.]" (citation omitted) (*quoting* Minn. Stat. § 13.03.2(b)));

*Zellner v. Cedarburg Sch. Dist.*, 731 N.W.2d 240, 295 n.3 & 299 (Wis. 2007)

(Recognizing Wisconsin's express statutory exception to its open records law for

"materials to which access is limited by copyright" (*quoting* Wis. Stat. § 19.32(2))); *State*

*ex rel. Rea v. Ohio Dept. of Educ.*, 692 N.E.2d 596, 601–02 (Ohio 1998) (discussing the

*limited situations* in which the Federal Copyright Act would not prevent disclosure under

the open records law); *Lindberg v. Cnty. of Kitsap*, 948 P.2d 805, 812–13 (same).[4]

Third, the NCTQ inaccurately characterizes the University's copyright argument

as one that is premised upon confidentiality concerns.  Thereupon, the NCTQ asserts:

"Based on the widespread uses of syllabi in the educational community . . . [the

University's argument] is absurd."  The University's position, however, is unquestionably

rooted in copyright protection, which in no way pertains to confidentiality, but rather

protects against unauthorized copying and distribution.

Fourth, and finally, the NCTQ puts great emphasis on the Sunshine Law's policy

in favor of openness in government and its instruction to strictly construe its exemptions.

*See* § 610.011.   Under its policy argument, the NCTQ asserts: "Because federal

copyright law does not address disclosures pursuant to Sunshine Law requests, there is

no need to conduct any federal copyright analysis regarding this case."  Thus, the

NCTQ suggests that, because the Federal Copyright Act does not expressly address

the disclosure of copyrighted material under an open records law, it does not have any

applicability to Section 610.021(14).  Stated differently, the NCTQ contends that the

"protected from disclosure by law" language of Section 610.021(14) should be strictly

---

[4]  The NCTQ also cites to *Jartech, Inc. v. Clancy*, 666 F.2d 403 (9th Cir. 1982).  However, *Jartech* is irrelevant to the instant point as it does not address disclosure under an open records law.

construed to require the subject "law" to expressly prohibit disclosure under open records laws. This construction of Section 610.021(14) would be unreasonably strict and narrow, given the plain language of the statute. *See, e.g.*, *Am. Family Mut. Ins. Co. v. Mo. Dep't of Ins*, 169 S.W.3d 905, 909–13 (Mo. App. 2005) (holding requested data to be a trade secret under the Missouri Uniform Trade Secret Act and, thus, exempt from disclosure under the Sunshine Law, where the Trade Secret Act makes no mention of open records laws).

While the specific arguments the NCTQ raises under its first point are undoubtedly flawed, as outlined above, a "big picture" view of the NCTQ's arguments reveals a more noteworthy issue: Does the protection against unauthorized reproduction and distribution (Federal Copyright Act) qualify as a protection against disclosure (Section 610.021(14))?

The NCTQ's position on this issue appears to be that, because reproduction and distribution do not *equate* to disclosure, copyrighted work is not exempt from disclosure under the Sunshine Law. Review of the relevant case law, however, reveals that the test for determining whether the "protected from disclosure from law" exemption applies is not whether the subject law explicitly deals with disclosure. Rather, the proper inquiry is whether disclosing records pursuant to the Sunshine Law would violate the subject law.[5]

For example, in *North Kansas City Hospital Board of Trustees v. St. Luke's Northland Hospital*, 984 S.W.2d 113 (Mo. App. 1998), the circuit court held that

---

[5] Indeed, Section 610.021(14) "may be essentially redundant." 20A Mo. Prac., Administrative Practice & Procedure § 15:9 (4th ed.). "Usefully, the presence of this exception eliminates the need for analysis of such questions concerning the relationship between arguably conflicting statutes." *Id.*

requested records were exempt from disclosure under Section 610.021(14) because disclosure of the records "would violate both § 416.031.2 of Missouri's antitrust law and 15 U.S.C. §§ 1 and 2 of the Sherman Act." *Id.* at 119.  15 U.S.C. § 1 makes illegal "[e]very contract . . . in restraint of trade or commerce among the several States, or with foreign nations."  Section 416.031.2 and 15 U.S.C. § 2 make it illegal "to monopolize, attempt to monopolize, or conspire to monopolize trade or commerce" in Missouri and among the several States.

On appeal, this court reversed.  Yet, this court's reversal was not premised upon the fact that "protection from restraint and monopolization of trade and commerce" does not equate to "protection from disclosure."  Rather, this court's analysis turned on whether disclosure of the requested documents would in fact *violate* the antitrust laws, which we ultimately answered in the negative.  *St. Luke's Northland*, 984 S.W.2d at 120.

Turning to the instant case, in order to disclose the syllabi as requested by the NCTQ, the University would have to reproduce and distribute the syllabi.  Thus, while the Federal Copyright Act does not explicitly protect against disclosure, it does protect against the means by which the requested disclosure would be obtained.  Disclosing the syllabi to the NCTQ -- through reproduction and distribution -- would constitute a violation of the Federal Copyright Act.  Therefore, the syllabi *as requested* are "protected from disclosure by [the Federal Copyright Act]."  *See* § 610.021(14).[6]

---

[6]  The situation might be different if, rather than requesting copies of the syllabi, the NCTQ requested allowance to inspect the syllabi.  *See, e.g.*, *Venetian Casino Resort, LLC v. EEOC,* 530 F.3d 925, 935 n.4 (D.C. Cir. 2008) ("Disclosure is not an act of copyright infringement but reproduction is."); *but see Disabled Police Veterans Club v. Long*, 279 S.W.2d 220, 223 (Mo. App. 1955) ("[T]he right to inspect carries with it the right to make copies."); § 610.011 ("[A]ll public records of public governmental bodies shall be open to the public for inspection *and copying* . . . ." (emphasis added)).  However, such is not the case before us.  In its Point Relied On, the NCTQ clearly states that it is only "seeking copies" of the

8

In reaching this conclusion, we note that, while we are the first court of this state to address the issue at hand, our holding is consistent with Attorney General Opinion No. 138-87, which held: "A record restricted from being copied by federal copyright law is a record 'protected from disclosure by law' under subsection 14 of Section 610.021 to the extent that it is protected from being copied." *See Mesker Bros. Indus., Inc. v. Leachman*, 529 S.W.2d 153, 158 (Mo. 1975) ("[A]n opinion of the Attorney General is not binding . . . but may be, and often is, persuasive.").

We further note that, although the NCTQ requested access for the purpose of copying the syllabi, the University's response was to close the records and deny the request. It appears beyond dispute that the term "disclosure," as used in Section 610.021, and the terms "reproduction and distribution," as used in 17 U.S.C. § 102(a), are distinctly different. One could certainly disclose a record without either reproducing or distributing the same record. This is particularly true given the requirement that we construe the Sunshine Law liberally as to the availability of records and strictly as to any exceptions limiting availability. Construing the applicable statutes through this lens, we conclude that NCTQ's request *for access* to the syllabi is not protected from disclosure by the federal copyright statutes, which address only reproduction and copying. Thus, the subject records should not be deemed closed. However, the University could properly deny the NCTQ's sole request to copy the documents. Accordingly, we find no error in the circuit court's determination that the University need not reproduce or distribute the syllabi as requested.

---

subject document. Moreover, at oral argument, the NCTQ stated that it would not be satisfied with permission to merely inspect or review the syllabi.

In its Point IV, the NCTQ raises a policy argument, contending that the circuit court's "approach to interpreting and applying the Sunshine Law  . . . eviscerate[s] the Sunshine Law and place[s] an impossible burden on government entities, requiring them to engage in extensive copyright analysis for most sunshine requests."  The NCTQ asserts that materials requested under the Sunshine Law are almost always copyrighted materials.  As such, the NCTQ claims that if we were to adopt the circuit court's reading of Section 610.021(14) the "government will need [ ] battalions of intellectual property lawyers to assist with the new burden that the University's position will foist upon the government."

The NCTQ grossly exaggerates the potential impact, if any, of adopting the circuit court's reading of Section 610.021(14).  Attorney General Opinion No. 138-87 -- opining that the Federal Copyright Act protects records from Sunshine Disclosure -- was published in 1987, nearly three decades ago.  Thus, if the NCTQ's policy argument had any merit, closure of records based on copyright protection should have run rampant by now.  Instead, the instant case is the first time the issue has been brought before the courts of this state.  As such, we are not persuaded that our decision today will "destroy the workings of the Sunshine Law" and impose an unmanageable burden upon the government, as asserted by the NCTQ.

For all the foregoing reasons, the Federal Copyright Act exempts the requested syllabi from Sunshine disclosure and, therefore, the circuit court did not err in entering judgment in favor of the University.  Points I and IV are denied.

***Point II — The Fair Use Doctrine's Applicability to Section 610.021(14)***

10

In its second point, the NCTQ contends that, even if the Federal Copyright Act protects certain records from disclosure under the Sunshine Law, the circuit court still erred in entering judgment in favor of the University because disclosure of the requested syllabi would constitute "fair use."

As stated above, the Federal Copyright Act provides copyright owners the "exclusive rights to do and to authorize" reproduction and distribution of their copyrighted works. 17 U.S.C. § 106(1), (3) (2012). Yet, reproduction and distribution by a third party "for purposes such as criticism, comment, . . . scholarship, or research[ ] is not an infringement of copyright;" rather, it is a lawful and "fair use." 17 U.S.C. § 107 (2012).

The NCTQ raises two arguments under its Point II. First, the NCTQ argues that there should always be a presumption that production in compliance with the Sunshine Law constitutes fair use *by the State*. The NCTQ asserts that, if a requester obtains copyrighted works through a Sunshine request and then uses it in a way that does not constitute "fair use," then the copyright holder can sue the requester. Thus, the NCTQ argues that "typically [the] only concern" in Sunshine Law/Copyright Act cases should be whether the government's disclosure of records under the Sunshine Law constitutes fair use. The NCTQ contends that the government should be presumed to engage in fair use "whenever" it discloses records "*for the limited purpose* of complying with the Sunshine Law." As an alternative argument under its second point, the NCTQ contends that, even if "the secondary use by the party seeking information" is the proper focus of the fair use doctrine as it applies to Section 610.021(14), the NCTQ's proposed use of the requested syllabi constitutes fair use.

11

The NCTQ's "fair use" arguments fail. First, this court lacks the authority to determine whether a particular use of copyrighted materials constitutes fair use, as federal courts have "original jurisdiction of any civil action arising under [the Federal Copyright Act]." 28 U.S.C. § 1338; *see Picometry Intern. Corp. v. Freedom of Info. Comm'n*, 59 A.3d 172, 192 (Conn. 2013).

Second, such a fair use presumption would be contrary to law. As noted by the United States Supreme Court: "The drafters [of the Federal Copyright Act] resisted pressures from special interest groups to create presumptive categories of fair use, but structured the provision as an affirmative defense requiring a case-by-case analysis." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561 (1985).

Finally, the nature of the fair use doctrine renders it inapplicable to the instant case. "Fair use is an affirmative defense" to a claim of copyright infringement. *Campbell v. Acuff-Ruse Music, Inc.*, 510 U.S. 569, 599 (1994). And "the burden of proving fair use is always on the party asserting the defense." H.R. Rep. No. 102-836, at 3 n.3 (1992); *see Frontenac Bank v. T.R. Hughes, Inc.*, 404 S.W.3d 272, 284 (Mo. App. 2012). Consequently, fair use "is relevant only after a copyright owner has made out a prima facie case of infringement." H.R. Rep. No. 102-836, at 3 (1992).

Furthermore, as a practical matter, the fair use doctrine does not work in the context of Sunshine Law requests. A Sunshine Law request is made and must be responded to before the actual use of the requested record occurs. And nothing in the Sunshine Law requires a request to include the requester's actual purpose for requesting the documents. Consequently, we agree with the University's argument that "[i]t would be untenable as a legal and practical matter to interpret the Sunshine Law to

12

require a custodian of records to make a fact intensive decision on a mixed question of law and fact regarding future use when the custodian has no information about the use and no means to get more information."

Accordingly, the fair use doctrine has no applicability to the present case and, thus, the circuit court did not err in entering judgment in favor of the University. Point II is denied.

***Point III — The University's "Standing" to Invoke Copyright Protection***

In its third point, the NCTQ contends that the circuit court erred in entering judgment in favor of the University "because the University lacked standing to enforce copyrights in that the copyrights to the syllabi were owned by teachers, not the University." The NCTQ asserts that "[t]o the extent [the University] asserts that [the Federal Copyright Act] gives faculty members the exclusive right to make copies of course syllabi, the University is attempting to 'enforce' a property right that it denies it owns."

The University asserts that the NCTQ's standing argument could have some merit "[i]f the University were trying to bring an infringement action to enforce copyrights owned by its faculty." But, the University continues, "that is not this case." Here, the University decided that the exclusive rights of faculty authors to authorize reproduction and distribution meant that the syllabi were "protected from disclosure by law" within the meaning of Section 610.021(14). Thus, the University contends that it was "simply making the determination required by the Sunshine Law."

We agree that the University can object to the disclosure based on copyright protections for the documents requested. The very nature of Section 610.021(14) gives

13

the University standing -- and, in fact, requires the University -- to assert and establish a disclosure exemption. *See* § 610.027. The University was not attempting to enforce copyrights owned by its faculty. Rather, the University was merely attempting to meet its burden of persuasion to demonstrate compliance with the Sunshine Law. *See id.* Point III is denied.

## CONCLUSION

The circuit court's judgment is affirmed.

/s/ LISA WHITE HARDWICK
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

14