

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| DAVID E. ROLAND, | ) | No. ED106192 |
| | ) | |
| Respondent/Cross-Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | 1622-CC09861 |
| | ) | |
| ST. LOUIS CITY | ) | Honorable Jason M. Sengheiser |
| BOARD OF ELECTION | ) | |
| COMMISSIONERS, JERRY HUNTER, | ) | |
| PAUL MALONEY, BENJAMIN | ) | |
| PHILLIPS, JOSEPH BARBAGLIA, | ) | |
| MARILYN JOBE, LEO G. STOFF, and | ) | |
| MARY WHEELER-JONES, | ) | |
| | ) | |
| Appellants. | ) | Filed: February 5, 2019 |

### OPINION

The St. Louis City Board of Election Commissioners, Jerry Hunter, Paul Maloney, Benjamin Phillips, Joseph Barbaglia, Marilyn Jobe, Leo G. Stoff, and Mary Wheeler-Jones (collectively, the Board) appeal the partial judgment issued by the Honorable Julian Bush of the Circuit Court of the City of St. Louis that ordered the Board to produce certain absentee ballot-related documents pursuant to a Sunshine Law request made by attorney David E. Roland. Roland's cross-appeal challenges the order requiring him to pay court costs incurred in connection with the second stage of the bifurcated trial held in this case. We reverse and remand in part and affirm in part.

## Background

In the course of his representation of a candidate taking part in the August 2016 primary election in the City of St. Louis, Roland requested from the Board, pursuant to Missouri's Sunshine Law (§§ 610.010-610.225) and § 115.289,[1] the absentee ballot applications and absentee ballot envelopes generated in connection with the elections held in the City of St. Louis from 2012 through 2016. As the term "absentee" suggests, a voter who is unable to be present on election day due to one of the justifications enumerated in § 115.277, may request an absentee ballot by written application to the election authorities. The application requires the voter to set forth certain personal information such as the applicant's name, address, and the reason absentee voting is necessary. § 115.279.

The Board denied Roland's Sunshine request for the ballot applications and envelopes[2] and Roland filed suit. Judge Bush held the first phase of a bifurcated trial, and on August 23, 2016 issued a partial judgment in favor of Roland holding that the absentee ballot applications and envelopes were not shielded from disclosure and that the Board, pursuant to the Sunshine Law, must deliver those materials to Roland, which the Board eventually did.

In the second phase of the trial, the Honorable Jason Sengheiser considered Roland's claim made pursuant to § 610.027, for attorney's fees and costs alleging that the Board *knowingly* or *purposefully* violated the Sunshine Law when it refused to produce the absentee ballot applications

---

[1] All statutory references are to RSMo 2016 unless otherwise indicated.

[2] Though it denied the request for the applications and envelopes, the Board, pursuant to § 115.289.4, produced the specific *list* of absentee ballot applications, which the statute requires the Board to create and maintain, for the August 2016 election because Roland had the written authorization from a candidate to receive the list, as required by statute. However, the Board denied Roland's request for all the absentee ballot application *lists* generated in earlier elections, presumably because he did not have the written authorization from a candidate in those elections.

2

and envelopes. In its October 16, 2017 judgment, the court found that the Board did not knowingly or purposefully violate the Sunshine Law and therefore denied Roland's claim for attorney's fees and costs. But costs in the amount of $1,084.50 were taxed by the clerk against Roland, presumably because he did not prevail on his counterclaim. The Board's appeal of Judge Bush's August 23, 2016 partial judgment and Roland's cross-appeal of Judge Sengheiser's October 16, 2017 partial judgment are now before this Court.

## Standard of Review

In reviewing a court-tried case, we will reverse the judgment only if no substantial evidence supports it, the judgment is against the weight of the evidence, or it erroneously declares or applies the law. *Chasnoff v. Mokwa*, 466 S.W.3d 571, 576–77 (Mo.App.E.D. 2015). Issues of statutory interpretation are questions of law which we review *de novo*. *Laut v. City of Arnold*, 491 S.W.3d 191, 196 (Mo.banc 2016); *Finnegan v. Old Republic Title Co. of St. Louis, Inc.*, 246 S.W.3d 928, 930 (Mo.banc 2008).

## Discussion

I.      *The issues presented here, though likely moot, fall within the public interest exception to our general prohibition against ruling on moot issues.*

One of the threshold issues governing appellate review is whether the controversy before the court is moot. *State ex rel. Reed v. Reardon*, 41 S.W.3d 470, 473 (Mo.banc 2001). A case is moot if the court's judgment would have no practical effect upon an existing controversy. *TCF, LLC v. City of St. Louis*, 402 S.W.3d 176, 181 (Mo.App.E.D. 2013). When an event occurs that makes a decision on appeal unnecessary or makes it impossible for the appellate court to grant effectual relief, the appeal is moot. *Id.* An exception to the mootness doctrine arises when the issue raised is of general public interest and importance, will likely reoccur, and will likely evade appellate review in future controversies. *Id.*

3

Here, the controversy that is the subject of the first part of this appeal is moot since the Board has already produced the disputed documents. However, we find that the issues presented by the Board fall within the public interest exception to the mootness doctrine. First, access to governmental records, including election records, is of general public interest and importance. *See* § 610.011 ("It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law."). Second, it is likely that in the future, individuals and citizens may request the same type of records in dispute here, making the issues likely to reoccur in our trial courts. Third, the issues will likely evade appellate review because the tight deadlines prescribed by the statutory provisions in question make meaningful appellate review logistically difficult and unlikely. Therefore, finding the issues presented by the Board to be within the public interest exception to the mootness doctrine, we move to the merits of the appeal.

## II.    *Absentee ballot applications are protected from disclosure.*

The Board argues that the court erred by holding that absentee ballot applications are required to be disclosed under the Sunshine Law. We agree.

In construing a statute, our goal is to give effect to the intent of the legislature. *Leiser v. City of Wildwood*, 59 S.W.3d 597, 603 (Mo.App.E.D. 2001). We are to give words their plain and ordinary meaning whenever possible. *Id.* Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical or absurd result defeating the purpose of the legislature. *Id.*

In light of these fundamental precepts, we note that resolving this case requires us to reconcile several overlapping and sometimes conflicting principles. First, the Sunshine Law dictates that it be liberally construed to give effect to the policy of our state to open official conduct

4

to the scrutiny of the public. *Hyde v. City of Columbia*, 637 S.W.2d 251, 262 (Mo.App.W.D. 1982). This is contrasted here with the canon that we not adopt a statutory construction that would produce an absurd or illogical result. *Leiser*, 59 S.W.3d at 604. Finally, we must be careful to distinguish the disclosure of election-related materials in a Sunshine Law context from the disclosure of such materials in other contexts such as during the discovery phase of election-contest litigation.

Proceeding, then, to our analysis of Roland's Sunshine Law request, we find that giving effect to Roland's proposed interpretation of the statute would create an absurd and illogical result that we cannot abide, even against the backdrop of the Sunshine Law and the mandate that it be liberally construed.

The portion of the Sunshine Law at issue, § 610.021.14, provides: "Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close meetings, records and votes, to the extent they relate to the following: . . . [r]ecords which are protected from disclosure by law[.]" Thus, our review turns on whether absentee ballot applications are protected from disclosure by law, which in this case implicates § 115.289.3, the statute governing absentee ballots. *Nat'l Council for Teachers Quality, Inc. v. Curators of Univ. of Missouri*, 446 S.W.3d 723, 727 (Mo.App.W.D. 2014).

Section 115.289.3 states in relevant part:

> In each city not within a county . . . as applications for absentee ballots are received, the election authority shall list the name, voting address and mailing address, if different, of each applicant. Prior to 8:00 a.m. on the Friday before an election all absentee ballot applications, lists of absentee ballot applications, or any information contained on the absentee ballot applications shall be kept confidential. Use of the applications, lists or information contained thereon by the election authority prior to 8:00 a.m. on the Friday before an election for purposes other than processing absentee ballots shall be deemed a class one election offense. After 8:00 a.m. on the Friday before an election any person authorized under subsection 4 of this

5

section may copy the list, and the election authority may make copies of the list available to such persons for a reasonable fee determined by the election authority.

We address the salient points of this provision. First, the statute requires the Board to create a list of absentee ballot applications that are received, setting out the name, voting address, and mailing address of each absentee ballot applicant. Second, before 8:00 a.m. on the Friday immediately before an election, the statute declares confidential[3]: (1) the absentee ballot applications, (2) the lists of absentee ballot applications, and (3) any information contained on the absentee ballot applications. Violation of this pre-8:00 a.m. provision is a class one election offense.[4]

The statute then addresses the post-8:00 a.m. timeframe, providing that certain authorized persons may obtain, after 8:00 a.m. on the Friday before an election day, a copy of the *list* of absentee ballot applications that the election authority is required to create and maintain.

The pivotal point in this dispute is that while absentee ballot application *lists* are mentioned in both the pre-8:00 a.m. and in the post-8:00 a.m. portions of the statute, absentee ballot *applications* are only mentioned in the pre-8:00 a.m. provision, where they are declared confidential. Roland argues that by omitting mention of absentee ballot applications in the post-8:00 a.m. portion, the legislature intended for the absentee ballot applications to lose their confidential status at 8:00 a.m. and thereafter be available to anyone making a Sunshine request. Roland reasons that his interpretation is compelled by the Sunshine Law's stated policy favoring open records.

_____

[3] We assume without deciding that the legislature's use of the term "confidential" in this context is the substantial and effective equivalent of "closed" as that term is defined by § 610.010(1) and employed in the critical section at issue here, § 610.021.14, which permits a governmental body to close access to records that are protected from disclosure by law.
[4] A class one election offense is considered a felony under § 115.631(23) punishable by imprisonment up to five years or a fine ranging from $2,500 to $10,000, or both.

6

We disagree. The interpretation proposed by Roland would produce an illogical and absurd result that would defeat the legislative intent of § 115.289, which we find to be, in part, the protection from disclosure of certain private and sensitive information that absentee ballot applicants put on their applications. Absentee ballot applications include an applicant's home address and the reason an absentee ballot is needed (e.g., whether the person would be away from home on the day of an election), among other information. The private and sensitive nature of this information is manifest.

Nevertheless, we acknowledge that the legislature stripped the confidentiality of *some* of these absentee ballot documents as of 8:00 a.m. on the Friday before an election. The legislature decided that at 8:00 a.m. the aforementioned *lists* would be available, not to the public at large, but only to a limited group of authorized people. § 115.289.4. Specifically, the legislature limited the disclosure of the lists to those individuals who were associated with a campaign or anyone who applied for an absentee ballot. *Id.* In this way, the legislature struck a balance between open records and privacy concerns with regard to absentee voters' personal information.

We also find it significant to our analysis that the legislature made its intention with regard to the lists clear: create them and maintain them confidential before 8:00 a.m. but then release them only to a very limited group of people. Yet with regard to the applications themselves, the legislature did not follow the same pattern. The statute unequivocally designates the applications as confidential before 8:00 a.m. but then is silent as to their status after 8:00 a.m. We find that in light of the foregoing, it would be absurd and unjustified to read so much into the legislature's failure to reference "absentee ballot applications" in its post-8:00 a.m. language. It would be incongruous to conclude that after 8:00 a.m., the legislature intended on the one hand to lift the confidentiality veil from the *lists* and make them available only to a limited class of interested

7

persons, while on the other hand that the legislature intended to make available the entirety of the absentee ballot applications, which contain more information than the basic information found in the lists, including private and sensitive information, to the whole public. The legislative intent to protect sensitive information from public view would be defeated by not only increasing the amount of information that is available, but also increasing exponentially the number of people who could view it. It would be illogical to conclude that the legislature opened the front door only slightly with regard to the disclosure of the lists but then left the back door wide open to the applications themselves. We will not interpret a statute so as to reach an absurd result contrary to its clear purpose. *Leiser*, 59 S.W.3d at 604.

And we find support for our holding in *Hyde v. City of Columbia*, where the court held that a public disclosure pursuant to a Sunshine request was improper, even in the absence of a legislative exception precluding disclosure, due to the absurd result that would be produced. 637 S.W.2d 251 (Mo.App.W.D. 1982). In *Hyde*, a crime victim's personal information was shared with news reporters by the police department prior to the assailant being arrested. *Id.* at 253. The police department argued that while "arrest records" were exempted from Sunshine Law disclosure by § 610.100, "investigative records" were not. *Id.* at 259. The court noted the anomalous circumstance that would result if the relevant statutory text and the mandate to liberally construe the Sunshine Law were blindly followed: an assailant before his arrest could obtain investigative records concerning his own alleged crime, which records would likely include personal and sensitive information regarding the victim, yet once he was arrested the records would be closed. *Id.* In order to "avoid an absurd . . . application of the statute" the court held that investigation reports were not public records under the Sunshine Law, and therefore the police department should have denied the request. *Id.* at 263.

8

Therefore, we hold that absentee ballot applications are protected from disclosure and the Board properly denied Roland access to them. The Board's first point is granted and that portion of Judge Bush's judgment holding absentee ballot applications to be discoverable through a Sunshine Law request is reversed and remanded with directions to enter judgment in favor of the Board.

Before we proceed to the Board's second point, however, it is necessary that we clarify and stress that our holding is limited to Sunshine Law requests only and has no application to other contexts including election contests. Sections 115.526 through 115.601 govern election-contest litigation in Missouri and permit a party in such litigation to obtain, pursuant to a proper discovery request or court order, various election and ballot materials, which may include the absentee-ballot materials at issue here. Such disclosure is also contemplated by the Missouri Constitution in Article 8, Section 3, which reads: "in cases of contested elections, ballots cast *may be opened, examined, counted, and received as evidence.*" (emphasis added).

III.    *The trial court properly ordered ballot envelopes to be disclosed.*

We now turn to our discussion regarding the absentee ballot *envelopes.* The Board argues that the absentee ballot *envelopes* were "processed ballot materials" within the meaning of § 115.493, and therefore protected from disclosure. The trial court rejected this argument and ruled in Roland's favor by ordering the ballot envelopes to be produced. We agree with the trial court.

Section 115.493 protects certain election materials, including "processed ballot materials in electronic form and write-in forms" from disclosure except under certain scenarios. In its entirety, the Section reads:

> The election authority shall keep all voted ballots, ballot cards, *processed ballot materials in electronic form and write-in forms,* and all applications, statements, certificates, affidavits and computer programs relating to each election for twenty-two months after the date of the election. During the time that voted ballots, ballot cards, *processed ballot*

9

*materials in electronic form and write-in forms* are kept by the election authority, it shall not open or inspect them or allow anyone else to do so, except upon order of a legislative body trying an election contest, a court or a grand jury. After twenty-two months, the ballots, ballot cards, *processed ballot materials in electronic form, write-in forms,* applications, statements, certificates, affidavits and computer programs relating to each election may be destroyed. If an election contest, grand jury investigation or civil or criminal case relating to the election is pending at the time, however, the materials shall not be destroyed until the contest, investigation or case is finally determined.

(emphasis added).

The Board's argument would require us to adopt a nonsensical interpretation of this section and to improperly alter the wording of the critical phrase "processed ballot materials in electronic form and write-in forms." The Board would have us change that phrase to read "processed ballot materials in electronic form and [in] write-in forms," which we cannot do. A plain reading of § 115.493 demonstrates the terms "processed ballot materials in electronic form" and "write-in forms" refer to two separate categories of items, which defeats the Board's argument.[5]

First, the use of the plural "write-in forms" instructs us that the legislature intended the two items to be separate. If the phrase "processed ballot materials" was intended to be modified by the phrase "write-in forms," the statute would have read "processed ballot materials in electronic form and write-in form[]" or it would have omitted the first "form" entirely to read "processed ballot materials in electronic and write-in form."

Second, a word used two or more times in the same section should have the same meaning throughout. *Huff v. Union Elec. Co.*, 598 S.W.2d 503, 511 (Mo.App.E.D. 1980). Later in the statute, "processed ballot materials" and "write-in forms" are referred to distinctly, separated by a comma: "After twenty-two months . . . processed ballot materials in electronic form, write-in forms

---

[5] Moreover, logically "processed ballot materials in electronic form" would not include ballot envelopes, nor would "write-in forms" standing alone.

10

. . . and computer programs relating to each election may be destroyed." This sentence evinces that "write-in forms" are distinct from "processed ballot materials in electronic form."

The Board's second point is denied and therefore we affirm Judge Bush's partial judgment with respect to its holding that the absentee ballot *envelopes* are subject to Sunshine Law disclosure.[6]

*IV.    Roland did not properly preserve the issue of whether costs were improperly taxed against him.*

In his cross-appeal, Roland complains that costs were erroneously taxed by the clerk against him and in favor of the Board in connection with the Board's defense against Roland's cross-claim, which was tried separately from Roland's claim regarding the disclosure of absentee ballot applications and envelopes.

Rule 77.01[7] and § 514.060 provide that in all civil actions the prevailing party shall recover its costs against the other party. Moreover, § 514.260 imposes a duty on the clerk of the court to tax costs: "The clerk shall tax and subscribe all bills of costs arising in any cause or proceedings instituted or adjudged in the court of which he is the clerk[.]" The taxing of costs is generally a ministerial duty performed after entry of the final judgment. *Quality Bus. Accessories, Inc. v. Nat'l Bus. Prods., Inc.*, 880 S.W.2d 333, 335 (Mo.App.E.D. 1994).

Once a clerk taxes court costs, any party may file a motion to retax costs, giving the trial court the ability to review the clerk's bill of costs. *Montoya v. A-1 Mufflers, Inc.*, 331 S.W.3d 702,

---

[6] In the Board's reply brief it argues that even if we were to conclude that absentee ballot envelopes are not "processed ballot materials," we should reverse because reading §§ 115.295 and 115.299 *in pari materia* makes clear that absentee ballot envelopes are protected from disclosure. This argument was not properly set before us pursuant to Rule 84.04(d). *State ex rel. Sir v. Gateway Taxi Mgmt. Co.*, 400 S.W.3d 478, 491 (Mo.App.E.D. 2013) ("Arguments not contained in the point relied on and raised for the first time in the argument section of a brief are not reviewable."). Accordingly, we do not address this issue.

[7] All rules references are to the Missouri Supreme Court Rules (2018).

11

704 (Mo.App.W.D. 2011); § 514.270; Rule 77.05. If the trial court denies the party's motion to retax costs, the party may then appeal the denial to this Court. *Montoya*, 331 S.W.3d at 704. Absent a motion to retax costs, this Court does not have a court order to review on appeal. *See Solberg v. Graven*, 174 S.W.3d 695, 701 (Mo.App.S.D. 2005) (noting that even though the circuit clerk should have included certain items in its award of costs, the appellate court would not review the issue because the litigant did not file a motion to retax costs).

Here, Roland did not file a motion to retax costs. Therefore, the issue was never brought to the attention of the trial court and we cannot convict Judge Sengheiser of error with respect to an issue that he was not asked to decide. As a result, Roland's cross-appeal is denied.

### Conclusion

For the reasons set forth above, that portion of the judgment directing the Board to produce the absentee ballot applications pursuant to a Sunshine Law request is reversed and remanded with directions to enter judgment in favor of the Board. In all other respects, the judgment is affirmed.

James M. Dowd, Judge

Sherri B. Sullivan, P.J., and
Lawrence E. Mooney, J., concur.

12